79 P.3d 1163 (2003)
ROGERS POTATO SERVICE, LLC., Respondent,
v.
COUNTRYWIDE POTATO, LLC; Ray Corey and Jane Doe Corey, husband and wife, Appellants.
No. 21709-4-III.
Court of Appeals of Washington, Division 3, Panel Ten.
November 4, 2003.
Publication Ordered November 25, 2003.
*1164 Lewis W. Card, Attorney at Law, Wenatchee, WA, for Appellants.
John G. Schultz, George Fearing, Leavy, Schultz, Davis & Fearing, Kennewick, WA, for Respondent.
KATO, J.
Rogers Potato Service, LLC, sued Countrywide Potato, LLC, for damages from defective potato seed. The court determined the defect in the seed was caused by exposure to cold during its transportation by Countrywide. The court awarded damages to Rogers, but offset that award against the *1165 amount it owed Countrywide under their seed contract. The end result was that the court entered a judgment for $32,331 in favor of Countrywide, which appeals. We reverse and remand.
Countrywide is a Nebraska limited liability company that sells potato seed. Ray Corey is one of its owners. Rogers, a Washington limited liability company whose sole owner is Joel Rogers, cuts and sells potato seed in Franklin County.
In 1999, Countrywide agreed to sell blue tag Shepody potato seed to Rogers. The seed was to be delivered in February and March 2001. The parties signed a contract memorializing this agreement.
On March 26 and 27, 2001, Countrywide delivered $52,237 worth of Shepody seed to Rogers. This was roughly half of the contracted seed. Rogers determined that there was insufficient demand for Shepody seed so it did not need the balance of the seed under the contract. Countrywide was willing to allow Rogers to substitute a different variety of seed at the same price, but an agreement was never reached.
When the Countrywide seed was received, Rogers inspected it and noticed no defects. On March 30 and 31, 2001, the seed was cut and some was delivered to farmer Doug Muse. There were also no noticeable defects in the seed at the time of cutting.
The seed was stored overnight in the field under tarps in Mr. Muse's trucks. While being planted the next day, the seed appeared abnormally wet. Mr. Muse and Rogers examined the seed. Mr. Muse elected to plant the seed, not believing anything was wrong with it.
By mid-April, Mr. Muse noticed problems with the field and notified Rogers, who hired Steven Z. Holland, a potato expert and technical consultant, to evaluate the situation. Mr. Holland found a significant degree of decay in the seed. He saw evidence of Fusarium, a soil-borne or seed-borne fungus, which was the primary invasion into the seed tissue. Pythium and Erwinia, secondary organisms, were also present. He believed the likely cause of the problem to be seed exposure to cold that was not sufficient to cause freezing, but would cause defects. If there is a chill but no freeze, no apparent defects will be visible. He also stated it was customary to wait two to three weeks before cutting seed and planting it in order to allow the seed to acclimate to the local temperature. That was not done here.
Mr. Holland recommended sending samples to Washington State University's Irrigated Agricultural Plant Lab for evaluation, where Ellen Bentley determined the seed was rotted primarily due to an infection by "soil borne fungi Pythium species." She also noted that some of the seed was symptomatic of a pre-harvest cold injury.
Mr. Muse hired Dr. William T. Cobb, a plant pathologist, to inspect the plant and crop to determine whether to continue growing the seed. Dr. Cobb estimated about 35 percent of the seed was defective. He recommended continuing to grow the crop, however, because it was too late to replant. He sent samples to an Oregon State University diagnostician, who found Fusarium present in the seed. Dr. Cobb further noted that if chilling had occurred before delivery, it would have been likely that such damage would have been visible at the time of delivery.
Neither Mr. Holland nor Dr. Cobb was given any of the seed remaining at the Rogers warehouse to inspect.
Daniel Thompson grew and harvested the seed in Nebraska. At harvest, it had no defects. It was neither exposed to freezing temperatures nor any weather conditions that could have subjected it to chill damage. The seed was stored in an insulated, temperature-controlled building with computer-controlled ventilation that was checked twice a day. There was no evidence of chill injury during storage. The seed was shipped in refrigerated trailers with regulated temperatures.
Gary Leever, an inspector for the State of Nebraska, inspected the seed specifically for frost or chill damage. He noted no such damage during any of his inspections. He stated there was no chill damage before the seed was delivered to Rogers.
*1166 Ray Corey testified that the seed was harvested before there were any freezing temperatures. After harvesting, the seed was in a controlled temperature environment during storage and delivery. He also testified that had he been told of the issues prior to the seed being planted, he would have told both Rogers and Mr. Muse not to plant it.
Countrywide had shipped 53 loads of Shepody seed to Washington. Other than the problems encountered by Mr. Muse, no other farmer who received the seed had any problem.
Countrywide hired Dr. Robert Thornton, an expert who indicated that it was unlikely that the chill occurred before the seed arrived in Pasco. He believed any chill occurred after the seed was delivered to Rogers, which was further evidenced by the fact that only Mr. Muse had problems with the seed.
Because of the problems experienced by Mr. Muse, Rogers refused to accept more potato seed from Countrywide and negotiated a settlement with Mr. Muse for $19,906. In return, Mr. Muse assigned his rights with respect to the defective seed to Rogers.
Rogers thereafter sued Countrywide for breach of contract and express and implied warranties. After trial, the court concluded the chill damage occurred during the transportation of the seed from Nebraska to Washington. The seed was therefore not fit for the purpose intended. Based upon the problems with the seed, the court determined that Rogers was entitled to revoke its contract with Countrywide, although it still had to pay for the $52,237 of seed delivered. In addition, Rogers was entitled to recover the $19,906 it paid to Mr. Muse as settlement because of the implied contractual indemnity between the parties. The court entered a judgment in favor of Countrywide for $32,331. This appeal follows.
Countrywide first claims the court erred by finding that the seed suffered chill damage while being transported from Nebraska to Washington. We will not overturn a court's findings of fact if they are supported by substantial evidence. Bering v. SHARE, 106 Wash.2d 212, 220, 721 P.2d 918 (1986), cert. dismissed, 479 U.S. 1050, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987). "Substantial evidence exists if the record contains evidence of sufficient quantity to `persuade a fair-minded, rational person of the truth of the declared premise.'" Id. (quoting In re Snyder, 85 Wash.2d 182, 185-86, 532 P.2d 278 (1975)). Evidence can be substantial even if other reasonable interpretations of the evidence can be made. Sherrell v. Selfors, 73 Wash.App. 596, 600-01, 871 P.2d 168, review denied, 125 Wash.2d 1002, 886 P.2d 1134 (1994).
Countrywide contends that the court's findings are based on speculation and there is nothing more than a scintilla of evidence to support the finding that the seed suffered chill damage while en route to Pasco. A finding must indeed be supported by more than a scintilla of evidence. Smith v. Yamashita, 12 Wash.2d 580, 582, 123 P.2d 340 (1942). A finding also cannot be supported by speculation or conjecture. State v. Hutton, 7 Wash.App. 726, 728, 502 P.2d 1037 (1972).
The testimony supporting the court's finding that the seed suffered chill damage during transportation was given by experts in plants and plant pathology. These experts offered their opinion that the seed was damaged during transport. But the opinion of an expert must still be based on facts; opinions based on assumptions are not sufficient. See Theonnes v. Hazen, 37 Wash. App. 644, 648, 681 P.2d 1284 (1984). An expert's opinion must have a proper foundation. Walker v. State, 121 Wash.2d 214, 218, 848 P.2d 721 (1993). Here, the experts testifying that the damage occurred before the seed arrived in Pasco based their opinion not on facts, but on mere assumptions or speculation.
Potato seed freezes at 28 degrees; slightly above that, they chill. Chilled seed will look fine, but it will not perform as desired. Depending on the temperature, a chill injury would not be visible until one to two weeks after planting.
Mr. Holland believed the seed was exposed to an undesirable environment and was most likely exposed to cold. But he admitted he *1167 was unaware of temperatures in Nebraska at the relevant times. He neither knew how the seed was stored, nor was he able to specify when the chill damage occurred. His opinion as to when any chill occurred was thus based on speculation.
Ms. Bentley's report indicated she understood that seed growers experienced a pre-harvest cold injury. Although she opined the seed was defective because of a pre-harvest chill, she admitted she was unaware where the seed was grown or how it was transported. Her opinions regarding the pre-harvest chill were based on assumption, not fact.
Dr. Cobb evaluated the situation and determined a temperature problem existed. He said that one reason for the decay could have been how it was stored or transported. He could not, however, state that storage or transport was the probable cause of the chill. Moreover, he acknowledged he was neither familiar with how the seed was stored or transported nor with the growing conditions of this seed.
Joel Rogers testified that the nights in Pasco got cool at the relevant times. He also knew that one night the temperature was 28 degrees. None of the other seed in his warehouse had any problems.
Mr. Thompson, the seed grower, testified the seed was stored in an insulated, ventilated building. None of the seed was stored against a door. There was no evidence that the seed suffered any frost or chill damage. The State of Nebraska inspector also found no problems with the seed.
Countrywide shipped 53 loads of Shepody seed to Washington. Only Mr. Muse experienced problems. The seed was shipped in temperature-controlled vans. The temperature was set between 45 and 60 degrees.
Dr. Thornton stated one would see evidence of a chill injury within 24 to 48 hours. Such an injury would have been visible at the time of cutting. Given the facts here, he did not think it was likely the seed was chilled before arriving in Pasco. If the chill injury were symptomless, he would expect little to no impact on growth.
These opinions based on speculation are not substantial evidence supporting the court's finding that the chill damage occurred while the seed was in transit from Nebraska to Pasco. There are simply no facts to support the experts' opinions. Accordingly, the finding cannot be sustained. To the extent the court's conclusions of law depend on this finding, they too are unsupported.
Countrywide also claims the court erred by concluding Rogers was entitled to revoke its acceptance of the seed. RCW 62A.2-608 provides for revocation of acceptance, the "`Code's version of the common-law remedy of rescission.'" Aubrey's R.V. Ctr., Inc. v. Tandy Corp., 46 Wash.App. 595, 600, 731 P.2d 1124 (1987) (quoting Computerized Radiological Servs., Inc. v. Syntex Corp., 595 F.Supp. 1495, 1510 (E.D.N.Y. 1984), aff'd in part, rev'd in part, 786 F.2d 72 (2d Cir.1986)). RCW 62A.2-608(1) permits a buyer to revoke acceptance of a commercial unit "whose non-conformity substantially impairs its value." Moreover, the buyer may revoke acceptance even without discovery of the non-conformity if the buyer's acceptance was reasonably induced by the difficulty of discovery prior to acceptance. RCW 62A.2-608(1)(b).
Whether a non-conformity in goods substantially impairs their value is a fact question determined objectively with reference to the buyer's particular circumstances. Aubrey's. 46 Wash.App. at 602, 731 P.2d 1124. The court found the potato seed was defective when delivered, so Rogers was entitled to revoke acceptance under RCW 62A.2-608(1)(b). Because the finding that the seed defect was caused in transit by Countywide was not supported by substantial evidence, the court erred in determining a non-conformity existed that substantially impaired the seed's value. Rogers was thus not entitled to revoke its acceptance under RCW 62A.2-608.
Countrywide further asserts the court erred by concluding it was required to indemnify Rogers. This conclusion, however, is based upon the court's finding that Countrywide was responsible for the chill damage. Because that finding was unsupported by substantial evidence, the conclusion does not *1168 flow from the findings and cannot be sustained.
Countrywide next contends it is entitled to damages under RCW 62A. 2-703 because Rogers wrongfully revoked its acceptance. That is an issue for the trial court to decide.
Finally, Countrywide claims it was entitled to judgment for the full contract amount along with prejudgment interest. Again, this is a determination to be made by the trial court.
We reverse the damages award to Rogers and remand for new trial on the issues of damages for wrongful revocation of acceptance and prejudgment interest.
WE CONCUR: BROWN, C.J., and KURTZ, J.