[No. 74860-8. En Banc.]
Argued September 9, 2004. Decided September 16, 2004.

ROGERS POTATO SERVICE, L.L.C., *Petitioner*, v. COUNTRYWIDE POTATO, L.L.C., ET AL., *Respondents*.

*John G. Schultz* and *George B. Fearing* (of *Leavy, Schultz, Davis & Fearing, P.S.*), for petitioner.

*Lewis W. Card* (of *Davis Arneil Law Firm*), for respondents.

PER CURIAM — We consider here whether the evidence adduced at trial supports the judgment in this action for breach of contract and breach of warranties. Because cir-

cumstantial evidence is as acceptable as direct evidence, we conclude the expert testimony presented by the plaintiff is sufficient to support the judgment. We reverse the Court of Appeals.

Doug Muse raises potatoes. He ran short of seed and was unable to finish planting one of his crop circles. He asked Rogers Potato Service, L.L.C., to supply him with enough seed to finish his planting. Rogers bought seed potatoes from Countrywide Potato, L.L.C., a grower in Nebraska. The seed crop was grown a year earlier, stored over the winter in Nebraska, and shipped by truck to Rogers's Pasco facility. The seed was at Rogers's facility for three days, during which time it was stored in an insulated building. On one of those evenings, the outside temperature was 28 degrees.

Rogers cut the seed for Muse and delivered it to the field, where it sat covered in trucks overnight. In the morning, Muse's seed planter called him and said the seed looked different from the Canadian seed he had just planted. Muse inspected the seed and noticed it was weeping,[1] but after cutting into several pieces, he did not find any decay in the seed. Muse also conferred with Rogers about the seed. Since he had successfully planted weeping seed in the past, he decided to plant the seed.

Two weeks later, during a routine inspection of the field's progress, Muse discovered that the seed was decaying. He asked Steve Holland, a potato specialist, to inspect the field. Holland discovered a significant amount of decay in the seed that he thought might have been caused by seed chill. Seed chill, which occurs between temperatures of 28 degrees and the mid-30 degrees, damages the cell structure, increases decay, and reduces yield. Holland sent some seed samples to Washington State University for evaluation. There, Ellen Bentley determined the seed was decaying due to an infection that was symptomatic of seed chill.

---

[1] Since potatoes are largely water, sometimes when they are cut the cut surfaces become wet. This is known as weeping. Muse said the surfaces were wet but they were not slimy; otherwise, he would not have planted the seed.

Muse also hired Dr. William Cobb to evaluate the crop in order to determine whether to dig it up or let it grow. Cobb visited the field on May 2 and sent a sample to Oregon State University for analysis. The Oregon lab said the seed was decaying from secondary infection and that the initial damage had likely been present in the seed for some months before planting. Based on his inspection and the Oregon report, Cobb told Muse the damage was likely due to improper storage or transport and did not occur during planting or afterward. But because of the late date, Cobb advised Muse to let the crop grow since it was too late in the season to plant another one.

Rogers had a contract with Countrywide for more seed, but since the seed used by Muse seemed defective, Rogers refused to accept any more of Countrywide's seed. When Muse's crop ultimately failed to produce, Muse sought redress from Rogers. Muse settled with Rogers and assigned his rights to Rogers regarding the defective seed. Rogers then sued Countrywide for breach of contract and breach of warranties. Countrywide counterclaimed for the amount due under its contract with Rogers.

At trial, Holland and Cobb both testified as experts for Rogers. Each opined that, based on their inspections of the crop and the university reports, the poor yield was probably due to chilled seed. And both said that they did not think the chill occurred in Pasco or at the farm but rather prior to arriving in Washington. They noted that while it is simple to see the damage caused by freezing, chill damage might not show up until days after the seed has been cut and planted. But neither expert knew any facts relating to the previous year's growing season in Nebraska, the storage of the seed, or the transport of the seed. Thus, neither expert was willing to give an opinion on whether the chill happened specifically during Countrywide's handling of the seed.

Countrywide hired Dr. Robert Thornton, a noted potato expert. Thornton testified that he did not agree with the other experts and said that any chill damage would be

apparent to the trained eye within 48 hours. He thus opined that the poor yield was not due to seed chill because several professionals had inspected the seed prior to its arrival in Pasco without noticing any decay. Representatives of Countrywide testified that the seed-potato crop was harvested before it got too cold and that it was stored and transported properly.

The trial court concluded that the poor yield was due to seed chill and that the chill occurred while the seed was under Countrywide's control. Since the chill rendered the seed nonconforming under the Uniform Commercial Code, the trial court ruled that Rogers had properly repudiated the contract. Consequently, Rogers was allowed to deduct the cost of Muse's seed from the amount owed Countrywide and did not have to pay for the seed that Rogers refused to take from Countrywide after discovering that Muse's seed was defective.

Countrywide appealed, arguing there was no factual basis for the trial court's conclusion that the seed chill had occurred while the seed was in Countrywide's possession. The Court of Appeals reversed, holding that because the experts knew nothing about the conditions in Nebraska, or about the transporting of the seed, they could not opine that Countrywide was responsible. We disagree.

A trial court's findings of fact will not be reversed if supported by substantial evidence. *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986). Substantial evidence exists if a rational, fair-minded person would be convinced by it. *Id.* Even if there are several reasonable interpretations of the evidence, it is substantial if it reasonably supports the finding. *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 713, 732 P.2d 974 (1987). And circumstantial evidence is as good as direct evidence. *State v. Gosby*, 85 Wn.2d 758, 766-67, 539 P.2d 680 (1975).

The Court of Appeals concluded there was insufficient evidence to support the trial court's conclusion that Countrywide was responsible for the defective seed potatoes. The court said that the expert testimony that the chill damage

occurred during transport was not supported by facts because the experts were unaware of the temperatures in Nebraska and did not have any firsthand knowledge of the growing operation, the storage of the seed, or the transport. According to the appellate court, "the experts testifying that the damage occurred before the seed arrived in Pasco based their opinion not on facts, but on mere assumptions or speculation." *Rogers Potato Serv., L.L.C. v. Countrywide Potato, L.L.C.*, 119 Wn. App. 815, 820, 79 P.3d 1163 (2003).

■ But while both of Rogers's experts said they could not offer an opinion on whether the seed was chilled specifically during harvest, storage, or transport, they said that, based on their observation of the seed in the field and the university tests, the seed had been chilled, and the damage had occurred, sometime before the seed arrived in Pasco. This testimony was plainly based on facts since both experts visited the field, inspected the seed and the growing crop, and relied upon forensic reports from reputable sources. *See* Evidence Rule 703 (expert may opine based on facts reasonably relied on by other experts in the particular field); *Reese v. Stroh*, 128 Wn.2d 300, 309, 907 P.2d 282 (1995) (expert may base opinion on firsthand knowledge or on facts generally relied on by other experts).

■■ The Court of Appeals reasoned that there was no evidence contrary to the Countrywide employees' testimony that Countrywide did not cause the seed chill. But the trial court could have rejected this testimony and instead chosen to believe Rogers's experts, who said that the seed was damaged before it arrived in Pasco and thus, circumstantially, while still under Countrywide's control. Although the evidence arguably does not support the trial court's finding that the damage occurred specifically during transport, the evidence does support the court's other finding that the seed was defective when Countrywide delivered it to Rogers.

Since a rational, fair-minded person could be convinced by the expert testimony that the seed damage occurred before the seed arrived in Washington and thus while under

Countrywide's control, the evidence is sufficient to support the trial court's judgment. We thus reverse the Court of Appeals.

Reconsideration denied December 14, 2004.