Honorable Jim Honeyford Senator, 15th District P.O. Box 40415 Olympia WA 98504-0415
Honorable Bruce Chandler, 15th District Honorable Kelli Linville, 42nd District Honorable Dan Newhouse, 15th District Honorable Bill Grant, 16th District Honorable Bill Hinkle, 13th District State Representatives P.O. Box 40600 Olympia, WA 98504-0600
Dear Senator Honeyford and Representatives Chandler, Linville, Newhouse, Grant, and Hinkle:
By letter previously acknowledged, you have requested our opinion on several questions, which we have paraphrased slightly as follows:
 1. In reviewing a water conservancy board record of decision regarding a water right transfer application, is the state Department of Ecology authorized to go beyond the contents of the board's record of [original page 2] decision and conduct an independent factual investigation in regard to the application?
 2. Does Ecology have the authority to reject a record of decision based on the board's findings of fact if the facts are supported by evidence in the board's report of examination?
 3. Is a board entitled to deference in regard to its findings of fact and its interpretation of the laws?
 4. Is a board required to follow Ecology's policies and guidelines if those policies and guidelines have not been adopted into rules or have not been adopted by the state Legislature in statute?
 5. May Ecology apply its own guidelines and policies in reviewing a board's record of decision, including guidelines and policies that have not been adopted as rules?
 BRIEF ANSWER
In reviewing a board's conclusion with respect to an application to transfer[1] a water right, Ecology is not limited to the factual materials developed by the board. Time limits applicable to Ecology's review of board records of decision (ROD), however, constrain Ecology's practical ability to conduct independent "investigations" into water right transfer applications. Governing statutes and regulations do not require Ecology to accept board "findings of fact" or to defer to board factual findings or interpretations of law, but Ecology's review of a board's decision on a water right transfer application is subject to appeal and de novo review before the Pollution Control Hearings Board. A water conservancy board is not required to follow Ecology policies and guidelines that have not been adopted into rules or enacted into statute. However, in reviewing a board decision, Ecology may utilize its guidelines and policies that reflect Ecology's interpretation of applicable water law and related administrative rules.
 BACKGROUND
To provide context for our analysis, we begin with a brief description of the statutory framework relating to the questions that you have asked, and relevant regulations promulgated by the director of Ecology pursuant to rulemaking authority granted to the director by RCW 90.80.040.
[original page 3] Background Regarding Establishment AndNature Of Water Conservancy Boards
The Legislature authorized the creation of water conservancy boards in 1997. Laws of 1997, ch. 441. The authorization of the creation of boards was partly in response to a significant backlog of water right transfer applications that had developed at Ecology. See Joint Legislative Audit and Review Committee,Water Conservancy Boards Review, Report 04-12 (December 1, 2004) ("JLARC Report"), at 4 ("[W]ater conservancy boards are one of the `release valves' the Legislature has created to cope with the building pressure of the backlog of pending water right transfer applications"). In RCW 90.80.005(3), the Legislature finds in part that "[t]he state should expedite the administrative process for water right transfers by authorizing the establishment of water conservancy boards." Laws of 2001, ch. 237, § 6.
Boards may be created by county legislative authorities, subject to approval by the director of Ecology. RCW 90.80.020(1). A board constitutes "a public body corporate and politic and a separate unit of local government in the state." RCW90.80.050(1). Boards may act upon applications for the same kinds of transfers that Ecology itself is authorized to act upon, subject to certain exceptions and limitations. RCW 90.80.055. Board commissioners are required to meet certain training and continuing education requirements. RCW 90.80.040.
Board Processing Of Water Right Applications
Upon the receipt of a water right transfer application, a board provides notice to certain entities. RCW 90.80.070(3). Any person may submit comments to the board, which comments the board must consider. Id. The board may require an applicant to submit additional information as the board requires, to review and act upon the application. RCW 90.80.070(1). A majority of the board determines whether such a transfer application is consistent with applicable statutory requirements and should or should not be approved. In either event, a board states its conclusion in a ROD. RCW 90.80.070(4), (5). The law defines a ROD to mean "the conclusion reached by a water conservancy board regarding an application for a transfer filed with the board." RCW90.80.010(6). Its ROD is subject to review by the director of Ecology. RCW 90.80.080(2). When the board determines that a transfer should be allowed, its "proposed approval must clearly state that the applicant is not permitted to proceed to effect the proposed transfer until a final decision is made by the director [of Ecology]." RCW 90.80.070(4). The ROD is to be supported by a record of examination (ROE), which is to "summariz[e] factual findings on which the board relied in reaching its record of decision". RCW 90.80.080(1). The ROE "is an integral part of the record of decision" and "must be on a form provided by ecology". WAC 173-153-030. The central importance of ROEs is reflected in Ecology's rule that prescribes their content. See WAC 173-153-130, attached.
A board may request technical assistance from Ecology (and from the county government or governments of the county or counties in which it is operated). RCW 90.80.055(1)(d). This assistance may include, among other things, assistance as the board prepares draft RODs and ROEs, as it considers technical factors, and as it considers legal factors affecting the board's development of an ROD. WAC 175-153-120.
[original page 4] Ecology Authority And Review Of BoardDecisions
The Legislature has authorized the director of Ecology "as deemed necessary by the director" to adopt rules to carry out the provisions of RCW 90.80, which relates to water conservancy boards. Pursuant to this grant of rulemaking authority, the director has adopted rules, codified in WAC 173-153.
The director also is charged by statute with reviewing "each record of decision made by a board". RCW 90.80.080(2). The director is to affirm, reverse, or modify water conservancy board RODs based upon their "compliance with applicable state water law." Id. Such "applicable state water law" includes requirements that existing rights not be impaired, that a transfer not exceed the existing water right limits, that rights proposed to be transferred have been beneficially used and not lost due to common law or statutory forfeiture, and that a transfer be in the public interest.[2] See, e.g., RCW90.03.380, .390; 90.44.100. Thus, Ecology's ability to conduct the statutorily required review of RODs necessarily depends upon Ecology's having access to relevant factual information. A board is required to "submit its report of examination to the department summarizing the factual findings on which the board relied in reaching its record of decision and a copy of the files and records upon which the board's record of decision is based." RCW 90.80.080(1). In addition, any person may submit a letter of support or concern to the department which the department may consider. RCW 90.80.080(3).
The director has 45 days from receipt of the ROD to "affirm, reverse, or modify the action of the board" — a period that may be extended by 30 days by the director or at the request of the board or the applicant for a water right transfer. RCW90.80.080(4). If the director does not act within that period, the board's decision becomes the final decision of Ecology and is appealable in the same manner as other water rights decisions made pursuant to RCW 90.03 and 90.44. Id. Where the director does act within the prescribed period, that final decision is similarly appealable. RCW 90.80.090. Such appeals would be heard by the Pollution Control Hearings Board (PCHB). RCW43.21B.110(1)(c) (providing PCHB jurisdiction over, inter alia,
decisions of Ecology relating to "the issuance, modification, or termination of any permit, certificate, or license [issued] by [Ecology]"). See also RCW 43.21B.240 (providing that Ecology "shall not have authority to hold adjudicative proceedings pursuant to the Administrative Procedure Act" and that "[s]uch hearings shall be held by the [PCHB]"). Any such appeal would be heard by the PCHB "de novo", meaning that whether the transfer application should be approved would be determined based on evidence presented by the parties to the PCHB in an adjudicative hearing under the Administrative Procedure Act (APA), RCW 34.05, and not confined to documentation or facts previously considered by Ecology or a board. RCW 43.21B.170 (proceedings before PCHB "shall be conducted in accordance with such rules of practice and procedure as the [PCHB] may prescribe"); WAC 371-08-485 (in hearings before the PCHB "scope and standard of review shall be de novo unless otherwise provided by law"). See also Postema v.Pollution Control Hrgs. Bd., 142 Wn.2d 68, 121, 11 P.3d 726
(2000) (WAC [original page 5] 371-08-485 allows "Ecology and all other parties to present all relevant information for the [PCHB] to make a decision").
 ANALYSIS 1. In reviewing a water conservancy board record of decisionregarding a water right transfer application, is the stateDepartment of Ecology authorized to go beyond the contents of theboard's record of decision and conduct an independent factualinvestigation in regard to the application?
Your first question essentially asks whether the director of Ecology may consider factual matters in addition to those considered by a board when the director reviews a board's decision to approve or deny a water right transfer application. Based on the governing statutes and regulations promulgated by the director pursuant to the director's statutorily granted authority, we conclude that the answer to this question is yes, Ecology may consider factual matters in addition to those considered by a board. Several reasons support this conclusion. First, no language in RCW 90.80 limits the director's review to factual matters considered by a board, although certainly the Legislature could do so if it so chose. In fact, as to letters of concern or support, the law explicitly contemplates that Ecology may consider factual material in addition to that considered by a board. RCW 90.80.080(3). Second, the principal reason cited by the Legislature for authorizing boards is to expedite water right transfer decisions. RCW 90.80.005(3). That purpose is served by the requirement that the director's review be completed within a very short period. RCW 90.80.080(4). Confining the director's review to matters considered by a board would not enlarge the statutorily established timeframe for the director's final decision. By contrast, a conclusion that Ecology may not consider additional material could well frustrate efficiency in decision making on water right transfer applications. For example, additional material could provide necessary support for a board's inadequately supported conclusion that a transfer application would be consistent with water law requirements, or for the director to approve a transfer application where a board has disapproved the application based on a lack of sufficient factual information. Third, it would seem quite incongruous to conclude that the Legislature intended Ecology's review of a board decision to be confined to factual matters considered by a board when an appeal from a final decision with respect to a water right transfer application would not be confined to factual matters considered by a board or, for that matter, considered by Ecology. As previously noted, appeal from the final decision of the director of Ecology with respect to water right transfer applications is de novo. WAC 371-08-485.[3] Just as Ecology may consider matters not considered by a board in reviewing a board's ROD, the PCHB [original page 6] makes a new record in reviewing Ecology's final action. The concept of review "on the record" does not apply until there is judicial review of a PCHB decision. See RCW 43.21B.110 (review of PCHB decisions available only pursuant to APA); RCW 34.05.558 (APA review of disputed facts is generally confined to the agency record).
In addition, the Legislature empowered the director of Ecology to adopt rules "as deemed necessary by the director" to carry out RCW 90.80, and the director has done so. These rules authorize Ecology to consider information relating to a water right transfer application in addition to materials contained in a board's file. By rule, Ecology has established the forms on which RODs and ROEs are to be recorded and specifies categories of information and level of detail to be included. WAC173-153-130(6). In addition to specifying in detail matters that a board's ROE is to include, Ecology's rules provide that Ecology "may request additional information from the applicant or water conservancy board regarding the application and the board's decision, in addition to the requirements of subsection (6) of this section." WAC 173-153-130(7). Similarly, WAC 173-153-150(2) provides that in reviewing a board ROD and ROE, Ecology will review not only the ROD and ROE, but also "[a] ny otherrelevant information." (Emphasis added.) Thus, under its administrative rules, Ecology may review not only what it receives directly from the boards, but also whatever "other relevant information"[4] it deems necessary to determine whether the board's ROD complies with state water law.
Given Ecology's statutory responsibility to assure compliance with applicable state water law under RCW 90.80.080, the absence of statutory language restricting Ecology's review to material considered by a board, the de novo review that applies to appeals from a final water right transfer decision, the broad rulemaking authority granted to the director in RCW 90.80.040, and the above-referenced rules adopted by Ecology pursuant to that authority, we cannot conclude that Ecology's review of a board's decision to approve or disapprove a transfer application is confined to matters in a board's ROD, ROE, or the files and records upon which the board's decision is based. RCW90.80.080(1). We do note, however, a significant practical limitation on Ecology's ability to conduct "independent investigations" into issues raised by water right transfer applications. Ecology's review of RODs must be completed within 45 days (or 75 days if extended) of the receipt of RODs. RCW90.80.080(4). Given the fact that the processing of water right applications typically takes several months,[5] there typically would not be time for Ecology to conduct full-blown independent "investigations."
 [original page 7] 2. Does Ecology have the authority to reject a record of decision based on the board's findings of fact if the facts are supported by evidence in the board's report of examination?
Your second question asks whether Ecology must accept factual determinations made by a board where evidence submitted by the board to Ecology contains support for those findings. Findings of fact made in adjudicative (trial-like) proceedings often are afforded deference on appeal, by virtue of statute or the common law. See, e.g., RCW 34.05.570(3) (providing in part that in reviewing "agency orders in adjudicative proceedings" under the APA, a reviewing court shall grant relief from such order only if it determines, among other things, that "[t]he order is not supported by evidence that is substantial". See also II K. Davis R. Pierce, Jr., Administrative Law Treatise § 11.2 (3d ed. 1994) (substantial evidence test had its genesis in appellate court review of jury verdicts and traditionally applied only to formal adjudication and formal rulemaking). See Rogers PotatoServ., L.L.C. v. Countrywide Potato, L.L.C., 152 Wn.2d 387, 391,97 P.3d 745 (2004) (trial court findings of fact will not be disturbed on appeal if supported by substantial evidence).
However, a board's ROD on a transfer application does not entail the conduct of an adjudicative proceeding.[6]
Rather, it is only upon an appeal of Ecology's final decision on a water right transfer application that formal adjudicative processes are invoked. Ecology's decision to approve, reverse, modify, or remand a board's ROD on a water right transfer application is appealable to the PCHB. RCW 43.21B.110(1)(c). The PCHB in turn conducts administrative adjudicative hearings, pursuant to the APA, to review Ecology's decisions on transfers.See RCW 43.21B.160 (PCHB "shall have all powers relating to administration of oaths, issuance of subpoenas, and taking of depositions" as are granted to agencies under APA and "shall be subject to all duties imposed upon, and shall have all powers granted to" an agency under adjudicative proceeding provisions of APA); WAC 371-08-485(1) (PCHB hearings "shall be formal and quasi-adjudicative in nature").
Thus, formal findings of fact and conclusions of law are not involved in board proceedings in an administrative law sense.[7] Because the Legislature has not made the APA or similar adjudicative procedures applicable to board RODs or to Ecology's review of RODs, the concept of deference to formal findings of fact supported by some quantum of evidence (a concept relevant to APA adjudications and other trial-like proceedings) does not apply to [original page 8] Ecology's review of board RODs. Further, nothing in RCW 90.80 provides for such deference to factual determinations of a board. The board's findings thus do not constrain Ecology's authority to make what it believes to be the correct final decisions on water right transfer applications.
This is not to say, however, that Ecology is unfettered in reviewing board decisions on applications or that the law would provide no remedy if Ecology were to reject factual findings of a board for no reason. As noted, Ecology's decisions on applications are subject to appeal to the PCHB, RCW43.21B.110(1)(c), and are reviewed "de novo". WAC 371-08-485. Arbitrary and capricious agency action may also be subject to judicial review under RCW 34.05.570(3).
3. Is a board entitled to deference in regard to its findingsof fact and its interpretation of the laws?
As discussed in the preceding section, Ecology is not required to defer to the factual determinations of a board in its final decision-making authority on water right transfer applications, although Ecology's decisions are subject to review by the PCHB. With respect to a board's interpretation of the state's water laws, Ecology is likewise not required to defer to the boards. Nothing in RCW 90.80 compels Ecology to accept a board's legal interpretation. Indeed, the very vesting of final decision-making authority within Ecology indicates that the Legislature did not intend board views of water law to prevail over conflicting Ecology views. A contrary rule would promote, or at least permit, the adoption of widely varying legal interpretations in different parts of the state, depending on the views of particular boards. The initial review by Ecology of a board ROD, followed in turn by the availability of review by the PCHB and the courts, seems designed to promote the consistent application of the law throughout the state.
The vesting of final decision-making authority within Ecology, as opposed to boards, represents a fundamental policy choice by the Legislature. Obviously the Legislature could make a different choice if it so desired. As written, however, RCW 90.80 does not require Ecology to accept board legal interpretations with which Ecology does not agree.
4. Is a board required to follow Ecology's policies andguidelines if those policies and guidelines have not been adoptedinto rules or have not been adopted by the state Legislature instatute?
 5. May Ecology apply its own guidelines and policies inreviewing a board's record of decision, including guidelines andpolicies that have not been adopted as rules?
The procedures that govern board processing of water right transfer applications are contained in RCW 90.80 and WAC 173-153. To the extent that these provisions by their terms are applicable to boards, they represent binding legal authority on the boards.See, e.g., Manor v. Nestle Food Co., 131 Wn.2d 439, 445,932 P.2d 628, op. am. by 945 P.2d 1119 (1997), [original page 9]
("properly promulgated, substantive [administrative rules] have the force and effect of law"). (Citation omitted.) (Internal quotation marks omitted.)
The APA expressly encourages agencies "to advise the public of its current opinions, approaches, and likely courses of action by means of interpretive or policy statements." RCW 34.05.230(1). These statements "are advisory only." Id. "`Interpretive statement' means a written expression of the opinion of an agency, entitled an interpretive statement by the agency head or its designee, as to the meaning of a statute or other provision of law, of a court decision, or of an agency order." RCW34.05.010(8). "`Policy statement' means a written description of the current approach of an agency, entitled a policy statement by the agency head or its designee, to implementation of a statute or other provision of law, of a court decision, or of an agency order, including where appropriate the agency's current practice, procedure, or method of action based upon that approach." RCW34.05.010(15). "To better inform and involve the public, an agency is encouraged to convert long-standing interpretive and policy statements into rules." RCW 34.05.230(1). Conversion of interpretive and policy statements into rules is not required, however. See, Ass'n of Wash. Bus. v. Dep't of Rev.,155 Wn.2d 430, 442, 120 P.3d 46 (2005) (recognizing that RCW 34.05.230(1) grants agencies authority to adopt interpretive statements, which are advisory only).
As is the case with many state agencies, Ecology has certain policies and guidelines that facilitate its fulfillment of its statutory responsibilities. For example, Ecology's StaffGuidance for Administration of Chapter 173-153 WAC — WaterConservancy Boards (September 1, 2004) ("Staff Guidance") was developed "[t]o provide guidance and ensure statewide consistency and efficiency to the Water Resources Program staff that work with water conservancy boards (boards) and review the records of decision made by the boards." Staff Guidance, at 2. The Staff Guidance "is also intended to provide understanding as to how the boards, counties, and Ecology work together as cooperative agencies as boards process water right change applications."Id. Notably, the Staff Guidance "is based on the water conservancy board statute (Chapter 90.80 RCW) and rule (Chapter173-153 WAC)" and "is intended to explain current requirements,and not to set forth additional requirements or interpretationof law beyond what is currently required by the statute orrule." Id. (Emphasis added.)
Of course, Ecology cannot impose a "rule" without first undertaking rulemaking procedures under the APA. See generally
RCW 34.05.310-.395 (APA rule-making procedures).[8][original page 10] The Staff Guidance does not constitute rules, and we are aware of no other Ecology guidance or policies on water right transfers that purport to be rules. In any event, it is worth noting that an agency's interpretive rules, as opposed to its legislative rules, are not formally binding on the public, including water conservancy boards. As the Court in theAssociation of Washington Business explains:
 [Interpretive rules] serve merely as advance notice of the agency's position should a dispute arise and the matter result in litigation. The public cannot be penalized or sanctioned for breaking them. They are not binding on the courts and are afforded no deference other than the power of persuasion. Accuracy and logic are the only clout interpretive rules wield. If the public violates an interpretive rule that accurately reflects the underlying statute, the public may be sanctioned and punished, not by authority of the rule, but by authority of the statute. This is the nature of interpretive rules.
Ass'n of Wash. Bus., 155 Wn.2d at 447. (Emphasis omitted.)
Thus, boards are not bound by the Staff Guidance or other Ecology policy statements. However, to the extent that guidelines or policies reflect Ecology's interpretation of the law relating to water right transfer applications, it is logical to assume that Ecology will follow them in reviewing board decisions. As a practical matter, then, if a board elects not to apply the same interpretation, its decision might be reversed or significantly modified by Ecology on review. As previously explained, Ecology's final decision then would be subject to appeal to the PCHB by an appropriate party.[9]
We trust the foregoing will prove useful to you.
Sincerely,
ROB McKENNA Attorney General
ROBERT J. FALLIS Assistant Attorney General
:bw
[1] "Transfer" means a transfer, change, amendment, or other alteration of a part or all of a water right authorized under RCW90.03.380, 90.03.390, or 90.44.100. RCW 90.80.010(7).
[2] The State Supreme Court has held that in the context of a change of surface water rights, the public interest test is not applicable. PUD 1 of Pend Oreille Cy. v. Dep't of Ecology,146 Wn.2d 778, 798, 51 P.3d 744 (2002).
[3] If Ecology lacked the authority to supplement the record when reviewing a ROD, Ecology's practical alternative would be to reverse any ROD based upon insufficient information or upon an incorrect view of the applicable law. This would be a cumbersome and inefficient alternative and seems unlikely to be what the Legislature intended. Moreover, we think it unlikely that the Legislature would have intended to limit Ecology to a board record only to have the PHCB not so limited in its review of Ecology's decision on a board ROD. For its part, the PCHB "shall make findings of fact based on the preponderance of the evidence unless otherwise required by law"; written final decisions and orders of the PCHB "shall contain findings and conclusions as to each contested issue of fact and law." WAC 371-08-535.
[4] We understand that under some circumstances Ecology has performed additional analyses of its own prior to making a decision on a ROD, such as when Ecology concluded that a ROE did not contain adequate analysis to support approving a proposed transfer. See JLARC Report, at 18, 27. In other such instances, Ecology has reversed the board decision or suggested that the board withdraw it. Id. at 27.
[5] Between 1998 and the first quarter of 2004, the average Ecology processing time for water right transfer applications was four years and the median time was two years, 11 months. During the same period, the average board processing time was 343 days and the median time was approximately eight and a half months.JLARC Report, at 23. Ecology typically could not realistically conduct a complete, independent investigation into an application within the 45/75-day statutory review period in which it is required to make a decision on a board ROD.
[6] In its original form, RCW 90.80 required boards to conduct a "hearing" for the benefit of any water rights holder who claimed that his or her water rights would be impaired by a proposed transfer. However, this requirement was eliminated in 2001 amendments to RCW 90.80. See Laws of 2001, ch. 237, § 11.See also RCW 43.21B.240 (Ecology "shall not have authority to hold adjudicative proceedings pursuant to the Administrative Procedure Act").
[7] As noted above, however, Ecology has prescribed the form of documents on which RODs and ROEs are to be set forth, as well as some categories of matters which boards must address in their review of applications. From the outset, the Legislature has required boards to "summariz[e] factual findings on which the board[s] rel[y]" in reaching their RODs. RCW 90.80.080. However, as noted, the APA does not apply to board actions on water right transfer applications.
[8] "`Rule' means any agency order, directive, or regulation of general applicability (a) the violation of which subjects a person to a penalty or administrative sanction; (b) which establishes, alters, or revokes any procedure, practice, or requirement relating to agency hearings; (c) which establishes, alters, or revokes any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law; (d) which establishes, alters, or revokes any qualifications or standards for the issuance, suspension, or revocation of licenses to pursue any commercial activity, trade, or profession; or (e) which establishes, alters, or revokes any mandatory standards for any product or material which must be met before distribution or sale. The term includes the amendment or repeal of a prior rule, but does not include (i) statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public, (ii) declaratory rulings issued pursuant to RCW 34.05.240, (iii) traffic restrictions for motor vehicles, bicyclists, and pedestrians established by the secretary of transportation or his designee where notice of such restrictions is given by official traffic control devices, or (iv) rules of institutions of higher education involving standards of admission, academic advancement, academic credit, graduation and the granting of degrees, employment relationships, or fiscal processes." RCW 34.05.010(16).
[9] Cf. Dep't of Ecology v. Theodoratus, 135 Wn.2d 582, 589,957 P.2d 1241 (1998) (as agency charged with regulating state water resources under RCW 90.03, Ecology's interpretation of those statutes is entitled to great weight if they are ambiguous).