

2016 NOV 28 AM 9: 05

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | No. 74643-0-I |
| MICHAELA FELLOWS, | DIVISION ONE |
| Appellant, | |
| and | |
| CHARLES FELLOWS, | UNPUBLISHED OPINION |
| Respondent. | |
| | FILED: November 28, 2016 |

MANN, J. — Michaela Osborne[1] appeals the trial court's ruling that she was in contempt of court for violating the dissolution decree relating to her marriage with former husband Charles Fellows. The trial court found Osborne in contempt after she intentionally violated the court's order by damaging the couple's former home before vacating it. Because substantial evidence supports the trial court's finding of contempt and proper imposition of a remedial, not punitive sanction, we affirm.

---

[1] Appellant's last name is now Osborne.

## FACTS

This case arises out of dissolution proceedings involving Michaela Osborne and Charles Fellows. The trial court distributed the parties' assets and granted the decree of dissolution on June 30, 2015. The decree of dissolution awarded the family home, located at 10021 SE 192nd Place, Renton, Washington, to Fellows but permitted Osborne to remain living there for an additional 60 days. Osborne had until August 30, 2015, to remove her belongings from the property and quitclaim her interest in it to Fellows. The decree ordered Fellows to pay $54,000 to Osborne for her equity interest in the home.

At the conclusion of trial, counsel for Fellows asked the court to "issue an oral ruling to not do something to the house or destroy it."[2] The court ruled that

> The house needs to be maintained in the condition it is. I'm—I don't want to see—there's no need for the parties to be back here again. This is going to be the cleanest way for these parties to just—there's nothing that should be holding you together, including this house, so the house needs to be in a livable condition.[3]

The court also granted Osborne a permanent protection order against Fellows.

On July 8, 2015, the trial court presented its written ruling and further commented:

> The home should be in—if there's any sabotage or anything done to the home, I will allow—consider a contempt motion here and will address any potential reduction of damages. I think the easiest way to—I think [Osborne] is aware that she needs to leave the home intact. Do not damage it in any way, shape, or form. If that's a concern, the parties may come back for a contempt consideration and address any damages that may have occurred.[4]

---

[2] Report of Proceedings (RP) (June 30, 2015) at 240.
[3] RP (June 30, 2015) at 240.
[4] RP (July 8, 2015) at 251.

Osborne vacated the home within the designated time period. On August 31, 2015, Fellows came by the house and saw a hole in the front door and paint splashed on the exterior and the deck. He called the police and reported the damage. The police contacted Osborne, who told them that she had possession of the house until September 8, 2015, and "anything that she does to her house until then is okay."[5] According to the police, Osborne "would not admit to actually being the one that damaged the residence," but claimed that her children did it, and that it was a "temporary lapse in judgment."[6]

The parties do not dispute the extent of the damage done to the house. Paint was splattered and streaked across the interior and exterior of the house. There were holes in the walls, doors, cabinets, floors, and ceilings. The baseboards, doorframes, and windowsills were damaged. There were cracks and chips in the tile, the countertops, the bathroom sinks, and one of the mirrors. There were numerous handwritten messages on the walls addressed to "Chuck" and "Chucky."[7] There was a small round hole and writing scratched into the front door. The estimate cost to repair the damage and replace the fixtures totaled $144,937.49.

Fellows moved for an order of contempt on October 2, 2015. On October 26, 2015, he filed a declaration of a private investigator he had hired, which contained a report of a conversation with one of the couple's neighbors. The report included statements from the neighbor about seeing "a hole in the front door and paint on the side of the house."[8] According to the investigator, Osborne had told her neighbor that

---

[5] Clerk's Papers (CP) at 577.
[6] CP at 578.
[7] CP at 148, 158, 164-170, 180.
[8] CP at 424.

she "did it," in reference to the damage to the house, and that she "couldn't wait until Charles saw the house."[9] Osborne filed a declaration on November 3, 2015, which included police reports of Fellows' prior harassment and violation of the protective order. She also included declarations from witnesses stating that the house was in livable condition before Osborne moved out.

In her declaration, Osborne admitted to removing the refrigerator, the stove, the dishwasher, and speakers from the walls of the house. She stated that she "only took what wasn't in the house when we purchased it."[10] She also admitted to the "minimal writing on the walls, and the carving on the front door," but argued that Fellows had "[seen] the writing before he moved out of the house."[11] She declared that when she left on August 28, 2015, "it was in a livable condition, with no damages to the cabinetry, no paint on the walls, no holes in the walls, or any of the other damages."[12] According to Osborne, her children and her niece tracked paint inside and made handprints on the walls when she went to the house with the Renton Police.

Osborne also stated in her declaration that she believed Fellows damaged the house himself and blamed her. Fellows submitted a declaration in reply contesting all of Osborne's assertions and included the police investigation report from the night he discovered the house had been damaged.

At the hearing on November 9, 2015, the trial court found Osborne to be in contempt of court for "intentionally fail[ing] to comply with the oral ruling of Judge

---

[9] CP at 424.
[10] CP at 431.
[11] CP at 428.
[12] CP at 428.

Galvan and lawful orders of the court dated on 7/8/2015."[13] The trial court found that Osborne violated the order by "willfully and purposefully destroy[ing] the family home."[14] The trial court found that Osborne had the past and present ability to comply with the order but did not have the present willingness to comply with the order. As a result, the trial court ruled that Osborne was in contempt of court and that she may purge the contempt by "[p]ay[ing] the monies awarded to Charles Fellows per the Judgment Summary contained herein."[15]

## ANALYSIS

We review a trial court's decision in a contempt proceeding for an abuse of discretion. In re Marriage of James, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995). An abuse of discretion is present only if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons. State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Any "intentional . . . [d]isobedience of any lawful judgment, decree, order or process of the court" is a contempt of court as defined by RCW 7.21.010(1)(b). Where the superior court basis its contempt finding on a court order, the order "must be strictly construed in favor of the contemnor" and the facts found "must constitute a plain violation of the order." Dep't of Ecology v. Tiger Oil Corp., 166 Wn. App. 720, 768, 271 P.3d 331 (2012). The moving party has the burden of proving contempt by a preponderance of the evidence. James, 79 Wn. App. at 442.

---

[13] CP at 502.
[14] CP at 502.
[15] CP at 503.

Osborne first assigns error to the trial court's findings of fact regarding her failure to comply with the court's order and "willfully and purposefully destroy[ing] the family home."[16] A trial court's factual findings regarding contempt will be upheld on appeal if they are supported by substantial evidence.[17] In re Marriage of Rideout, 150 Wn.2d 337, 350, 77 P.3d 1174 (2003). Substantial evidence exists if a rational, fair-minded person would be convinced of the truth of the declared premise. Hegwine v. Longview Fibre Co., Inc., 162 Wn.2d 340, 353, 172 P.3d 688 (2007). Even if there are several reasonable interpretations of the evidence, it is substantial if it reasonably supports the finding. Fred Hutchinson Cancer Research Ctr. v Holman, 107 Wn.2d 693, 713, 732 P.2d 974 (1987).

The trial court found that Osborne "intentionally failed to comply with the oral ruling of Judge Galvan and lawful orders of the court dated on 7/8/2015," by "willfully and purposefully destroy[ing] the family home."[18] Osborne admitted to writing on the walls and carving into the front door. She also stated in her declaration that the children made the handprints and tracked paint into the house. The police report included Osborne's statements that "she technically didn't do the damage to the house," but the children did, and that "she could do whatever she wanted to her house."[19] Based on her

---

[16] Br. of Appellant at 5-6; CP at 502.

[17] In her reply brief, Osborne argues for a de novo review of the record because the trial court's decision was based entirely on the parties' declarations and written submissions. If the parties do not dispute the underlying facts but only the conclusions drawn from the facts, de novo review is appropriate where the trial court relied solely on documentary evidence and there were no questions of credibility. In re Marriage of Langham and Kolde, 153 Wn.2d 553, 559, 106 P.3d 212 (2005). For a contempt proceeding such as this one, however, where credibility is an issue, the substantial evidence standard applies. In re Marriage of Rideout, 150 Wn.2d 337, 350-52, 77 P.3d 1174 (2003).

[18] CP at 502.

[19] CP at 578.

own admissions and the evidence in the record,[20] a rational, fair-minded person could find that Osborne violated the court's order by willfully and purposefully damaging the family home.

Next, Osborne argues that the trial court based the contempt findings on inadmissible hearsay evidence, namely the police report and the report of a private investigator's interview with a neighbor. Fellows argues that Osborne failed to object to the inclusions of these statements at trial, and therefore has not preserved the error for appeal. We agree.

It is well settled that objections to evidence cannot be raised for the first time on appeal. Sepich v. Dep't of Labor and Indus., 75 Wn.2d 312, 319, 450 P.2d 940 (1969), citing Omeitt v. Dep't of Labor and Indus., 21 Wn.2d 684, 152 P.2d 973 (1944).[21] We decline to exercise our discretion to consider Osborne's challenge to the admissibility of the reports under these circumstances. Her counsel at the contempt hearing spoke to the authenticity of the police report but did not contest the statements contained in it as hearsay. She was also aware of and had the opportunity to address the submission of the investigator's report, but chose not to speak to it. Osborne waived any objection to

---

[20] Osborne argues that Fellows only presented "unsubstantiated circumstantial evidence" that she did the damage to the house. Br. of Appellant at 15. This is of no consequence. Circumstantial evidence is just as good as direct evidence. Rogers Potato Service, LLC v. Countrywide Potato, LLC, 152 Wn.2d 387, 391, 97 P.3d 745 (2004).

[21] Osborne argues that the appellate court may review arguments brought up for the first time on appeal where the issue involves sufficiency of the evidence. RAP 2.5(a)(2) provides that an appellant may raise for the first time on appeal "the failure to establish facts upon which relief can be granted." This exception applies only where the proof of particular facts at trial is required to sustain a claim. Mukilteo Ret. Apts., LLC v. Mukilteo Investors, LP, 176 Wn. App. 244, 246, 310 P.3d 814 (2013). Division Three recently examined the rule and held that it "should be read, as it was intended to be read, as applying solely to insufficient proof of an essential element of a party's case. That description does not apply to the trial court's actions." State v. Clark, No. 32839-2-III, slip op. at 10 (Wash. Ct. App. Sept. 8, 2016), http://www.courts.wa.gov/opinions/pdf/328392_pub.pdf. While Osborne does argue that Fellows has failed to provide sufficient evidence to support a finding of contempt, her belated objection to the reports as hearsay would not fall within RAP 2.5(a)(2).

the reports as hearsay at the hearing and cannot raise the issue for the first time on appeal. RAP 2.5(a).

Finally, Osborne argues that the contempt charge was punitive and entered in violation of her constitutional rights. According to Osborne, the trial court intended to punish her for her past acts without the due process safeguards required by one facing criminal charges. Fellows argues that the contempt was remedial, not punitive, and was only imposed to compensate for the damage done to the house.

Under RCW 7.21.030(1), a trial court can impose "remedial" sanctions on a person for contempt of court after notice and hearing. However, under RCW 7.21.040(1)-(2) a trial court may impose "punitive" sanctions only after a complaint or information is filed based on probable cause. In addition, the trial court must provide those due process rights afforded to criminal defendants before imposing a punitive sanction. In re Pers. Restraint of King, 110 Wn.2d 793, 800, 756 P.2d 1303 (1988).

A "punitive sanction" is "a sanction imposed to punish a past contempt of court for the purpose of upholding the authority of the court." RCW 7.21.010(2). A "remedial sanction" is one that is "imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3). A sanction will be considered remedial rather than punitive if the contemnor is able to purge the contempt through an affirmative act. In re Dependency of A.K., 162 Wn.2d 632, 646, 174 P.3d 11 (2007).

Osborne declines to mention that the trial court provided her with a method of purging the contempt when she argues that her sanction was punitive. Here, the trial court expressly ruled that Osborne may purge the contempt by paying the monies

awarded to Fellows in accordance with the judgment. Furthermore, RCW 7.21.030(3) allows the court to order a contemnor to pay losses suffered as a result of the contempt and costs incurred in the contempt proceedings for any "person found in contempt of court." See State ex rel. Chard v. Androw, 171 Wash. 178, 17 P.2d 874 (1933). The contempt is remedial and Osborne was not entitled to further due process rights.

Both parties ask for fees on appeal under RAP 18.1. The rule entitles a party to reasonable fees and costs if an applicable law grants that right. RAP 18.1(a). Under RCW 7.21.030(3), a court may order a person found in contempt of court to pay a party for any costs incurred in connection with the contempt proceeding, including reasonable attorney fees. This includes fees incurred by a party defending the appeal of a contempt order. R.A. Hanson Co. v. Magnuson, 79 Wn. App. 497, 505, 903 P.2d 496 (1995). We award Fellows his fees and costs on appeal subject to his compliance with RAP 18.1(d).

Affirmed.

_____
Mann, J.

WE CONCUR:

_____
Spearman, J.

_____
Schindler, J.

-9-