[No. 28497-5-I.   Division One.   April 26, 1993.]

DANNY L. HARBISON, ET AL, *Respondents,* v. GARDEN VALLEY OUTFITTERS, INC., ET AL, *Petitioners.*

*John R. Crockett* and *Madden & Crockett* (*William H. Thomas* and *Michael Brady*, of counsel), for petitioners.

*Kathryn Jenkins*, for respondents.

BAKER, J. — We granted discretionary review of the trial court's order denying nonresident defendants' motion to dismiss for lack of personal jurisdiction. We reverse in part, granting the motion to dismiss as to the individual defendants, but affirm as to the corporate defendant because we hold that the acts of its predecessor entity in this state may properly be considered and are sufficient to establish jurisdiction under Washington's long-arm statute.

## FACTS

Garden Valley Outfitters, Inc. (Garden Valley) is an Idaho corporation which conducts a guided hunting expedition business in that state. It sold its assets to another Idaho corporation, Bear Valley Outfitters, Inc. (Bear Valley). Bear Valley then operated a promotional booth at a sports show in Seattle, where plaintiff reserved a deluxe elk hunting pack trip.

Thereafter, the sale between Garden Valley and Bear Valley was terminated and Bear Valley "return[ed] the business" to Garden Valley. Garden Valley specifically "assume[d] [Bear Valley's] obligation to the twenty-one (21) hunters who have tendered deposits at this time and shall render all remaining services due said hunters."

The Idaho Outfitters and Guides Board required that Garden Valley notify the clients of Bear Valley of the repurchase. Garden Valley sent plaintiff a letter which stated that

your reservations this year will be honored by Garden Valley Outfitters, Inc. Credit for your deposit has been made and

accommodations for the services you purchased has been arranged.

. . . .

Elk and deer numbers are better than they have been in years and we expect a banner year.

Plaintiff traveled to Idaho, paid the balance due for the trip, and allegedly found conditions at the base camp and hunting campsite to be materially inconsistent with representations made by Bear Valley. Plaintiff aborted the trip and demanded a refund, which was refused.

Plaintiff subsequently commenced this action against Garden Valley and its individual owners (Rotthoffs), and obtained service of process in Idaho.

The Rotthoffs and Garden Valley moved to dismiss for lack of personal jurisdiction. They supported their motion with an affidavit denying any contacts with Washington State except for the letter notifying plaintiff of the repurchase by Garden Valley. The trial court denied the motion.

## I

Preliminarily, we address an issue of appellate procedure. Garden Valley moves to "augment" the record pursuant to RAP 9.10 or RAP 9.11 with a second affidavit. The affidavit states that the plaintiff made no payment until arrival in Idaho and that following the repurchase by Garden Valley, the corporations of Garden Valley and Bear Valley retained separate identities and did not merge. The latter fact goes to an issue of successor liability that will be discussed below.

■ RAP 9.10 does not apply. It pertains only to additions to the record of earlier trial court proceedings. *See* 3 L. Orland & K. Tegland, Wash. Prac., *Rules Practice* task force comment, at 207 (4th ed. 1991). The affidavit Garden Valley seeks to introduce was not considered below.

■ RAP 9.11 is a limited remedy under which this court may direct that additional evidence may be taken if all of the following six criteria are met:

(1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably

change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

RAP 9.11(a); *State v. Ziegler*, 114 Wn.2d 533, 541, 789 P.2d 79 (1990).

These conditions are not all met here. The information contained in the affidavit is not needed to fairly resolve the issues on review. Payment of a deposit by plaintiff does not involve an act by the defendants in this jurisdiction, so is not dispositive. Furthermore, the repurchase agreement contained in the existing record accurately describes the status of the two companies following that agreement. Plaintiff does not allege that the two corporations were merged. Thus, the additional evidence would not change the decision of this court, and it would not be inequitable to decide the case on the existing record.

Furthermore, the information sought to be introduced was known to Garden Valley at the time of the hearing on its motion to dismiss below. Thus, there is no reason to excuse its failure to present the evidence to the trial court. *See Ziegler*, 114 Wn.2d at 541.

We therefore deny the motion to take additional evidence on review.[1]

We nonetheless admonish appellants for inappropriately including in the appendix to their opening brief the second affidavit and other materials not of record, without indicating to the court in the brief that those materials were not part of the record and that a motion was pending to allow

---

[1]Plaintiff seeks terms for having to respond to this motion. The appellants have violated no rule on appeal by bringing their motion pursuant to RAP 9.11. Thus, we award no terms. Plaintiff also appears to argue that he is entitled to terms for responding to a similar motion below. However, terms cannot be awarded here for violations of a local rule for which terms have previously been awarded below.

their consideration. This violates the intention of RAP 10.3 that factual statements in briefs must be referenced to the record. *See* RAP 10.3(4), (7).

## II

The trial court's order does not state whether it held jurisdiction was warranted under the general jurisdiction statute, RCW 4.28.080, or the long-arm statute, RCW 4.28-.185. These will be discussed in turn.

Regardless of which statute was applied, the question of personal jurisdiction is one of law which this court reviews de novo when the underlying facts are undisputed. *Hein v. Taco Bell, Inc.*, 60 Wn. App. 325, 328, 803 P.2d 329 (1991). The plaintiff has the burden of establishing that the trial court has personal jurisdiction. *Hein*, 60 Wn. App. at 328. The allegations in the complaint must be taken as correct for purposes of appeal. *Lewis v. Bours*, 119 Wn.2d 667, 670, 835 P.2d 221 (1992); *MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.*, 60 Wn. App. 414, 418, 804 P.2d 627 (1991).

Here, with the exception of whether plaintiff tendered a deposit while he was in Washington, the facts are undisputed. Since plaintiff alleged that he did tender the deposit, that will be assumed to be fact for purposes of this appeal.

General Jurisdiction Pursuant to
RCW 4.28.080(10)

Under RCW 4.28.080(10), a trial court may assert general jurisdiction over nonresident corporations "doing business within this state". General jurisdiction enables a court to hear cases unrelated to the defendant's activities within the forum. *Hein*, 60 Wn. App. at 328. This statute has been held to confer general jurisdiction over a nonresident defendant who transacts business in Washington that is substantial and continuous, and of such a character as to give rise to a legal obligation. *Crose v. Volkswagenwerk Aktiengesellschaft*, 88 Wn.2d 50, 54, 558 P.2d 764 (1977). This general jurisdiction statute subsumes the due process requirement of a

long-arm statute that addresses jurisdiction arising out of or relating to the defendant's activities within the forum. *See Hartley v. American Contract Bridge League*, 61 Wn. App. 600, 605, 812 P.2d 109, *review denied*, 117 Wn.2d 1027 (1991); *Hein v. Taco Bell*, 60 Wn. App. at 328-30.

In *MBM Fisheries*, this court held that receipt of a brokerage fee in an unrelated transaction, a 1-time participation in a Seattle trade show, the out-of-state performance of vessel repair for four Washington residents including the plaintiff, and the placement of magazine advertisements, some of which may not have been distributed in Washington, did not suggest continuous or substantial business activity such that general jurisdiction over the defendant could be obtained. *MBM Fisheries*, 60 Wn. App. at 420-22. Similarly, in *Banton v. Opryland U.S.A., Inc.*, 53 Wn. App. 409, 417-18, 767 P.2d 584 (1989), *overruled on other grounds in Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 783 P.2d 78 (1989), an in-state sales presentation, payment of commissions to travel brokers in Washington, occasional local broadcasts of music, and the receipt of a resident's check and return of a confirmation of reservation of tickets and lodging were not held to be systematic and continuous contacts that would justify general jurisdiction.

Assuming for this analysis that Bear Valley's acts in Washington can be considered for purposes of asserting jurisdiction over Garden Valley, we find nothing in these cases which would allow a finding of general jurisdiction over the defendants based upon a finding of systematic and continuous contacts in this state.

Specific Jurisdiction Under the<br>Long-Arm Statute

We next consider specific jurisdiction under RCW 4.28-.185, Washington's long-arm statute. This statute authorizes courts to exercise jurisdiction according to its terms over nonresident defendants to the extent permitted by the due process clause of the United States Constitution. *MBM Fisheries*, 60 Wn. App. at 423.

Plaintiff claims jurisdiction is proper under either RCW 4.28.185(1)(a), which confers jurisdiction over causes of action arising from a nonresident defendant's "transaction of any business within this state", or RCW 4.28.185(1)(b), under which jurisdiction may be extended if a tortious act is committed in this state.

■ Analysis of jurisdiction under our long-arm statute involves two questions: (1) whether the statutory language purports to extend jurisdiction, and (2) whether imposing jurisdiction would violate constitutional due process principles. *Grange Ins. Ass'n v. State*, 110 Wn.2d 752, 756, 757 P.2d 933 (1988), *cert. denied*, 490 U.S. 1004 (1989). The following three factors must be present to satisfy the due process element:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 115-16, 381 P.2d 245 (1963).

This test is similar to that established by the United States Supreme Court: (1) that purposeful minimum contacts exist between the defendant and the forum state, (2) that the plaintiff's injuries arise out of or relate to those minimum contacts, and (3) that the exercise of jurisdiction be reasonable and consistent with notions of fair play and substantial justice. *Grange Ins. Ass'n*, 110 Wn.2d at 758 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-78, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)).

a. Tortious Acts.

We first consider the tortious act prong. A tortious act occurs in Washington under RCW 4.28.185(1)(b) when the

injury occurs in this state. *Grange*, 110 Wn.2d at 757; *Walker v. Bonney-Watson Co.*, 64 Wn. App. 27, 33, 823 P.2d 518 (1992).[2] An injury "occurs" in Washington if the last event necessary to make the defendant liable for the alleged tort occurred in Washington. *MBM Fisheries*, 60 Wn. App. at 425. Thus, the alleged misrepresentations by Bear Valley in Seattle are not the critical events. Here, the last event was Garden Valley's alleged failure to provide the services as represented by Bear Valley. Because the final act did not occur in this state, the tortious act did not occur here, *see Smith v. York Food Mach. Co.*, 81 Wn.2d 719, 722, 504 P.2d 782 (1972), and long-arm jurisdiction may not be asserted under RCW 4.28.185(1)(b).

b. <u>Transaction of Business</u>.

The next question is whether jurisdiction exists under RCW 4.28.185(1)(a), the transaction of business clause. The threshold determination is whether in evaluating the contacts of Garden Valley, the acts of Bear Valley may also be considered.

■ Under successor liability principles, a company that purchases the assets of another company is not liable for the debts and obligations of the seller, unless (1) there is an agreement to assume the other company's debts or obligations, (2) the circumstances warrant a finding that there has been a consolidation or merger of the companies, (3) the transaction works a fraud on the creditors of the seller, *or* (4) the purchasing company is a mere continuation of the selling company. *See Cashar v. Redford*, 28 Wn. App. 394, 396, 624 P.2d 194 (1981). Here, the memorandum agreement terminating the sale to Bear Valley expressly stated that Garden Valley would assume Bear Valley's obligations to the hunters who had tendered deposits. This fulfills the first element; since the *Cashar* test is disjunctive, we hold that a

---

[2]Washington recently created an exception to this rule in the case of professional malpractice by a nonresident which takes place out of state, even when the injury first manifests itself in this state. *Lewis v. Bours*, 119 Wn.2d 667, 835 P.2d 221 (1992).

sufficient showing has been made that Garden Valley is liable to fulfill Bear Valley's obligations.[3]

The rationale of substantive successor liability is equally applicable to the question of personal jurisdiction. When a successor has assumed its predecessor's liabilities, the forum-related contacts of the predecessor should be attributed to the successor for jurisdictional purposes. This is because the assets purchased by the successor were, in part, derived from the forum, and the successor presumably had knowledge thereof. *Simmers v. American Cyanamid Corp.*, 394 Pa. Super. 464, 576 A.2d 376, 385, 389-90 (1990), *appeal denied*, 527 Pa. 649, *cert. denied sub nom. Tenneco Resins, Inc. v. Simmers*, 112 S. Ct. 63 (1991). We perceive no policy basis in such a case for insulating the successor entity from liability in the same jurisdiction where its predecessor would have been exposed.

As to Garden Valley, therefore, RCW 4.28.185(1)(a) purports to extend jurisdiction, because its predecessor transacted business in this state. *See Grange Ins.*, 110 Wn.2d at 756. We must next determine if the extension of jurisdiction would comport with due process.

■ The first question is whether the defendants purposefully established minimum contacts with Washington. *Grange Ins.*, 110 Wn.2d at 759-60. Analysis of this question includes consideration of whether defendants purposely derived benefit from interstate activities or purposefully availed themselves of the privilege of acting within Washington, thereby invoking the benefits and protections of its laws. *Grange Ins.*, 110 Wn.2d at 760; *Walker v. Bonney-Watson Co.*, 64 Wn. App. at 34. Again, based on *Simmers*, our analysis of this question will include consideration of the contacts of Bear Valley.

Garden Valley cites *Gravelie v. TBS Pac., Inc.*, 256 N.W.2d 230 (Iowa 1977) to no avail. The court in that case held that a travel package negotiated by Iowa travel agents, and plaintiff's tender of a check that was negotiated in Iowa, did not subject the defendant Hawaiian Hotel Corporation to

---

[3]Thus, whether the two corporations formally merged is not relevant. See prior discussion regarding Garden Valley's motion to supplement the record on appeal.

jurisdiction in Iowa, where performance of the contract was to occur wholly in Hawaii. The Iowa statute differs from Washington's, however, in that it requires that a contract be "performed in whole or in part by either party" in Iowa in order to establish that the foreign corporation is "doing business" in Iowa. *Gravelie*, 256 N.W.2d at 232. Washington does not have such a requirement in its statute.

This case is also distinguishable from *MBM Fisheries*, relied on by Garden Valley. There, the plaintiff sought the services of the nonresident defendant, and the work was done in the nonresident's state. The only link to this forum was the transmission of a final version of the contract. The other activities of the defendant that could be deemed purposeful, such as advertising and attendance at a trade show, were unrelated to the cause of action. The mere execution of a contract with a resident of the forum state does not fulfill the purposeful act requirement of the due process analysis. *Burger King*, 471 U.S. at 478-79. Thus, in *MBM Fisheries*, the court held that the defendant had not purposefully established minimum contacts in Washington. *MBM Fisheries*, 60 Wn. App. at 423-24.

Here, on the other hand, Bear Valley purposefully attended the sports show and solicited Washington clients (including plaintiff), deriving economic benefit. It followed up by sending promotional material and reservation confirmations into this state. Thus, the first element of the due process analysis is met.

The next question is whether the cause of action arises from or is connected with the defendants' acts. The alleged misrepresentations at the trade show and in a promotional videotape sent to plaintiff in this state are the basis of the cause of action. Thus, the second factor is satisfied.[4]

In determining the third due process factor, that is, whether the assumption of jurisdiction would offend traditional notions of fair play and substantial justice, we must

---

[4] We need not address whether the letter written by Garden Valley would alone be a sufficient contact under these first two elements.

consider the quality, nature and extent of the defendants' activity in Washington, the relative convenience of the parties in maintaining the action here, the benefits and protection that Washington's laws would afford the parties, and the basic equities of the situation. *DiBernardo-Wallace v. Gullo*, 34 Wn. App. 362, 366, 661 P.2d 991 (1983).

While the evidence does not reveal that the defendants' marketing activity in Washington was extensive enough to subject them to general jurisdiction, the quality of the contact here was clearly directed toward soliciting hunters for their trips. The contact was initiated by the defendants. Washington has an interest in protecting its consumer citizens from commercial misrepresentations which take place within the state. The relative convenience of witnesses appears to balance out fairly evenly; four hunters went on the trip, and they were hosted by approximately four to six employees at different stages in their excursion.

While Idaho undoubtedly has a strong interest in regulating the businesses involved, and the cause of action did arise at least in part out of the activities of the defendants in the foreign forum, we hold that imposing jurisdiction over Garden Valley in this state under RCW 4.28.185(1)(a), the transacting business clause, comports with due process.

There is no basis, however, for the exercise of personal jurisdiction over the individual defendants on these grounds, as the plaintiff conceded at oral argument. They are not successors to Bear Valley and had no individual contacts with Washington. We therefore reverse the trial court as to the Rotthoffs, and direct dismissal of the action against them.

### III

Garden Valley and the Rotthoffs seek attorney fees. A defendant who prevails on a long-arm statute jurisdictional issue may obtain fees under RCW 4.28.185(5). *Scott Fetzer Co. v. Weeks*, 114 Wn.2d 109, 112, 786 P.2d 265 (1990). The Rotthoffs have prevailed herein.

However, in this case we do not discern any research or argument devoted exclusively to the Rotthoffs as distin-

guished from the work performed on behalf of Garden Valley. We therefore decline to award any fees in this matter.

Affirmed as to Garden Valley and remanded for trial. Reversed as to the Rotthoffs.

GROSSE and AGID, JJ., concur.