IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LINDA LECLAIRE and CHRISTOPHER LECLAIRE, husband and wife, | No. 79678-0-I |
| Appellants, | DIVISION ONE |
| | UNPUBLISHED OPINION |
| v. | |
| RUSSEL ROGER HENRY dba HOME FINANCE, a Washington corporation, | |
| Respondent. | |

HAZELRIGG, J. — Linda and Christopher LeClaire appear pro se, seeking reversal of an order finding that they had not proven alleged violations of the Mortgage Broker Practices Act (MBPA)[1] and the Consumer Protection Act (CPA)[2]. Because substantial evidence supports the majority of the trial court's findings of fact and those findings support the court's conclusions of law, we agree that the LeClaires did not meet their burden. We affirm.

FACTS

In 2015, Linda and Christopher[3] LeClaire (the LeClaires) approached Russel Roger Henry, seeking financing to purchase a Gig Harbor short sale

---

[1] Chap. 19.146, RCW.
[2] Chap. 19.86, RCW.
[3] For clarity, the LeClaires will be referred to individually by their first names. We intend no disrespect

Citation and pinpoint citations are based on the Westlaw online version of the cited material.

property. Henry, doing business as Home Finance, was a licensed mortgage broker. He presented a loan application on the LeClaires' behalf to Carrington Mortgage Services (CMS). The LeClaires performed some repairs on the property before closing the sale because they wanted the lender to fund the loan. However, they did not complete all repairs necessary for the lender to fund the loan. They were then given the option of signing an escrow holdback agreement to secure funding for the loan, but they did not agree to its terms. They did not receive the loan and rescinded their offer to purchase the house.

The LeClaires filed suit, alleging that Henry had violated the MBPA by ordering the wrong appraisal, failing to order a required inspection, misrepresenting the nature of repairs to the property, and failing to make timely required disclosures. They also alleged violation of the CPA and negligent infliction of emotional distress.

In February 2019, the parties each represented themselves at a bench trial. Christopher LeClaire testified to the following facts. On August 20, 2015, the LeClaires initially viewed the property and were given a list of nearly $70,000 worth of repairs that needed to be made as "part of the discounting system for the broker price opinion." The realtor advised them that "the best route for [them] is a 203(k) loan to get them repaired."

Henry presented a loan submission form to Carrington Mortgage on behalf of the LeClaires. The boxes for two types of loans were checked on the form: a "FHA 203k Full" loan and a "FHA 203(b) REO Repair Escrow" loan. Christopher testified that he did not sign an application for an REO 203(b) loan and Henry did

not disclose to him that he was submitting an application for the 203(b) loan at the same time as the 203(k) loan. Later, Christopher testified that, although he did not tell Henry that he wanted the 203(b) loan, he agreed to move forward with it because it was the only way to purchase the property. He clarified that he was not sure whether the later 203(b) escrow holdback loan was the same loan as the one indicated on the initial application.

Christopher stated that the appraisal "did not have the correct verbiage" to support the 203(b) loan. He testified that they received a good faith estimate from Henry but that it was not legible and that they never received any updates. He stated that they received the "Truth in Lending Act" disclosure in the "loan package that [they] signed at escrow." Christopher testified that the first time he had any indication that the exposed wood on the deck could be an issue was the day he "went to escrow to sign."

On November 10, 2015, five days after they signed at escrow, Christopher emailed Shawnita Rhodes, an account manager for Carrington Mortgage, asking the reason for the delay in the loan and seeking clarification of the painting that needed to be done on the deck. She responded that, in order for the loan to fund, the entire deck would need to be painted, including stairs, rails, deck boards, and fascia. Christopher testified that he believed it was not possible to paint the deck at that time of year because of the weather.

The escrow holdback agreement was presented to Christopher that day. The terms of the escrow holdback required the LeClaires to submit $5,000 to be held in escrow, which would be released on performance of certain terms. They

did not accept the escrow holdback loan because they believed that the loan would have put them over the maximum "cash to close" specified in their original loan approval. Christopher believed that this would prevent the loan from funding because it would not pass final underwriting review. He also found the terms of the escrow holdback to be unacceptable because he believed it required the work on the deck to be done by a Carrington contractor and he thought it would cost more than $5,000. Christopher estimated that it would have cost $10,000 to $15,000 to complete the painting of the deck and the repairs necessary to prepare the deck for painting.

The loan did not fund. The LeClaires requested the loan file from Henry immediately after the loan failed because they were interested in trying to purchase the house again. Christopher testified that Henry refused to give them the file. They rescinded their offer to purchase the house.

The LeClaires elicited testimony that they later filed a complaint against Henry with the Department of Financial Institutions (DFI), which regulates mortgage loan originators and residential lenders in the State of Washington. After an investigation, examiners from DFI found that Henry had failed to timely provide loan applicants with full written disclosures containing an itemized explanation of all fees and costs in five different loan files, including the LeClaires'. Henry and DFI entered into a consent order to resolve the charges.

Henry testified to the following series of events. The LeClaires had approached him in August of 2015 and were interested in buying the Gig Harbor property. He had not seen the property but relied on their experience as a builder

and a realtor when they told him they thought the deck and roof would need to be replaced before the house would "meet marketable condition." The LeClaires estimated that they would need about $35,000 to replace the deck, so they "submitted the loan as a 203(k) light." Henry stated that a 203(k) light would allow them to close the loan without the work being done, so the LeClaires would have received the loan at closing and then could complete the work at their convenience. Henry submitted the application for the 203(k) loan and ordered "a 203(k) light appraisal." The appraiser required "some end cap[s] and some railings [on the deck] replaced, $CO_2$ [sic] detectors installed, and a roof inspection," but did not require the entire deck to be replaced.

Henry testified that he presented the LeClaires with the option to switch to a different type of loan because they would not need as much money for the deck and roof as they had originally estimated. They decided that they could do some of the work themselves and signed the paperwork to switch to a 203(b). The loan approval for the 203(b) specified that the "[c]ash to close may not exceed [$]14,392," which Henry took to refer to the "minimum down[]payment of 3½% for FHA."

Christopher replaced the railings on the deck and authorized Henry to order the roof inspection. The roof was certified for two years. Henry also testified that the appraiser had identified a small section of wood on the deck that was not covered or treated. The underwriter saw the appraisal, noted that all exposed wood needed to be covered or treated, and required the LeClaires to paint or stain the exposed wood on the deck. The LeClaires did not complete this work.

Henry testified that he had forgotten to include the good faith estimate and truth in lending disclosures in the packet that he sent to DFI for the investigation. He asserted that the LeClaires had signed the truth in lending disclosures and that he had made all required disclosures to them. He also stated that, whenever he submits a loan to a wholesale lender, the lender has three days to make required disclosures to the borrower, which the borrower must acknowledge or else the loan will not proceed. He testified that the LeClaires must have signed a "revised good faith and Truth in Lending" in early October after they switched to the 203(b) loan or else the loan process would not have proceeded.

On cross-examination, Henry acknowledged that the terms of the escrow holdback agreement required the LeClaires to pay the cost of having the exposed wood on the deck painted. Although he agreed that the terms seemed to state that a "Carrington Mortgage Services representative will do it," he maintained that the LeClaires could have performed the work themselves. He testified that the $5,000 would have been put into an escrow account "to make sure you go do the work and get it done so they can close the loan."

After the conclusion of the trial, the court entered written findings of fact and conclusions of law. The court ruled that the LeClaires had not met their burden of demonstrating that Henry had violated the MBPA or the CPA or that he had negligently inflicted emotional distress on them.

The LeClaires appealed. Henry did not file a responsive brief to this court.

ANALYSIS

The LeClaires appear pro se, arguing that the trial court erred in determining that Henry had not violated the MBPA or the CPA. They identify six assignments of error:

> 1. The trial court erred when it concluded that the submission of the LeClaires['] loan application by Henry would be good for two different loan programs.
> 2. The trial court erred when it determined that a Good Faith Estimate and a Truth in Lending Disclosure were properly delivered to the LeClaires.
> 3. The trial court erred when it accepted the results of the appraisal that was performed on the subject property. The appraisal that was done did not satisfy the requirements of the FHA 203k loan program.
> 4. The trial court erred when it determined that the LeClaires were given an opportunity to remediate the issue of exposed wood on the deck in order to fund their mortgage loan.
> 5. The trial court erred when it determined that the LeClaires would receive a full refund of the $5000 placed into an escrow account in order to secure the funding for their mortgage loan.
> 6. The trial court erred when it allowed inaccurate and false statements of testimony to be given by Henry in contrast to the FHA Guidelines that were in effect at the time of the LeClaires['] loan processing.

We interpret the first five assignments of error as challenges to the trial court's findings of fact. The sixth assignment of error appears to be an evidentiary issue.

We review challenged factual findings for substantial evidence. Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). Substantial evidence is that which is "sufficient to persuade a rational fair-minded person the premise is true." Id. "Even if there are several reasonable interpretations of the evidence, it is substantial if it reasonably supports the finding." Rogers Potato Serv., LLC v. Countrywide Potato, LLC, 152 Wn.2d 387, 391, 97 P.3d 745 (2004). We cannot review a fact-finder's credibility determination. Morse v. Antonellis, 149

Wn.2d 572, 574, 70 P.3d 125 (2003). Unchallenged findings of fact are accepted as true on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). After determining whether substantial evidence supports the factual findings, we consider de novo whether the supported findings are sufficient to support the trial court's decision. Bartlett v. Betlach, 136 Wn. App. 8, 18, 146 P.3d 1235 (2006).

I.     Challenged Findings of Fact

The first assignment of error appears to challenge finding of fact 5, which states: "Defendant submitted a loan application to Carrington Mortgage Services on behalf of Plaintiffs, seeking a 'FHA 203k Full' loan and a 'FHA 203(b) REO Repair Escrow' loan. Plaintiff's Ex. 5." The parties agreed that Henry submitted a loan submission to Carrington Mortgage Services on the LeClaires' behalf. The boxes indicating the two different types of loans were checked on the submission. Substantial evidence supports this finding.

The second assignment of error challenges the court's finding that the LeClaires received required disclosures from Henry. The full finding stated:

> 7. Though Department of Financial Institutions Program Manager and Enforcement Chief Steve Sherman testified that he found that Defendant had failed to provide Plaintiffs with a good-faith estimate and a Truth in Lending Act document, Christopher LeClaire testified that: (1) Plaintiffs did receive a good-faith estimate from Defendant, though it was difficult to read; and (2) Plaintiffs did receive a Truth in Lending Act document from Defendant.

This testimony is reflected in the trial record. We cannot review any credibility determination or weighing of this evidence performed by the trial court. Substantial evidence supports this finding.

Third, the LeClaires contend that the court erred in accepting the results of the appraisal because it did not satisfy the requirements of the FHA 203k loan program. The court addressed the results of the appraisal in finding of fact 10: "An appraiser concluded that, rather than replacing the entire deck on the Property, the following items needed to be addressed: 'The 3rd Floor deck end railings being installed, Carbon monoxide sensors being installed and the composition roof inspected for life expectancy.' Plaintiff's Ex. 10." Henry testified to the results of the appraisal, and the exhibit showing the appraiser's conclusions was admitted into evidence. Substantial evidence supports this finding.

The fourth assignment of error challenges finding of fact 16, which finds that "Plaintiffs were given an opportunity to seek the necessary repairs to the exposed wood at the Property in order for the lender to fund the loan." The LeClaires discovered that the exposed wood needed to be covered at escrow, at the latest. The lender appeared to indicate that it would fund the loan if the LeClaires accomplished the repairs. Although the LeClaires did not approve of the terms of the escrow holdback agreement and did not accept it, substantial evidence supports the finding that they had an opportunity to seek the necessary repairs to obtain the loan.

The LeClaires' fifth assignment of error appears to challenge a portion of finding of fact 18, which states: "Plaintiffs were also given the option of signing an 'Escrow Holdback Agreement' in order to secure funding for the loan, Plaintiff's Ex. 17, which would have required Plaintiffs to deposit $5,000 in an escrow account,

which would be returned to them upon proof of completion of the necessary repairs."

The proposed agreement states that the escrow company would hold $5,000 in escrow "for completion of the Work and payment of inspection fees." The funds would be released after the deck was painted and inspected. The document states that "[t]he Work shall be completed and inspected by CMS or its agents no later than ____ (the 'Completion Date')." A completion date was not specified in the unsigned agreement. Regardless of whether this term required that CMS or its agents perform the work, the proposed agreement specified that "[t]he costs for inspections performed pursuant to this Agreement shall be paid from the Escrow Fund." Also, CMS would have had the discretion to "apply the balance of the Escrow Funds, or any portion thereof, to the principal of the Mortgage Loan," even without the LeClaires' agreement.

Although there was conflicting evidence on this point and we cannot review the trial court's decision to credit Henry's testimony, the language of the proposed agreement cannot be reasonably interpreted as guaranteeing that the $5,000 in escrow funds would have been returned to the LeClaires after the deck was painted. Substantial evidence does not support the challenged portion of this finding of fact.

II.    Conclusions of Law

Having determined that substantial evidence supports all but one of the challenged findings of fact, we turn to the question of whether these findings substantiate the trial court's conclusions of law.

A. Mortgage Broker Practices Act

The court first determined that the LeClaires had not demonstrated that Henry had violated the MBPA. A mortgage broker violates the MBPA when they:

> (1) Directly or indirectly employ any scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person;
> (2) Directly or indirectly engage in any unfair or deceptive practice toward any person;
> . . .
> (6) Fail to make disclosures to loan applicants and noninstitutional investors as required by RCW 19.146.030 and any other applicable state or federal law;
> (7) Make, in any manner, any false or deceptive statement or representation with regard to the rates, points, or other financing terms or conditions for a residential mortgage loan or engage in bait and switch advertising[.]

RCW 19.146.0201. The MBPA specifies the disclosure requirements:

> Within three business days following receipt of a loan application from a borrower, a mortgage broker or loan originator must provide to the borrower a full written disclosure containing an itemization and explanation of all fees and costs that the borrower is required to pay in connection with obtaining a residential mortgage loan, and specifying the fee or fees which inure to the benefit of the mortgage broker and other such disclosures as may be required by rule. A good faith estimate of a fee or cost must be provided if the exact amount of the fee or cost is not determinable.

RCW 19.146.030(1).

The trial court did not find that Henry had defrauded or misled borrowers, engaged in unfair or deceptive practices, or made any false or deceptive statement regarding the terms and conditions of a loan. We construe the absence of a finding of fact against the party with the burden of proof. Barker v. Advanced Silicon Materials, LLC, (ASIMI), 131 Wn. App. 616, 627, 128 P.3d 633 (2006). The absence of these findings supports the conclusion that the LeClaires failed to prove that Henry violated subsection (1), (2), or (7) of RCW 19.146.0201.

The record contained conflicting testimony regarding the disclosures, which the court recognized in its findings. The court did not explicitly find that the LeClaires received all disclosures timely, but neither did it find that Henry failed to provide the required disclosures. The absence of these findings supports the conclusion that the LeClaires did not demonstrate that Henry violated the disclosure requirements of the MCBA. Also, implicit in the court's factual finding is a credibility determination, which we cannot review.

On the record before us, the factual findings supported the conclusion that the LeClaires had not proven Henry's alleged violations of the MBPA.

B.     Consumer Protection Act

The court also concluded that the LeClaires had not met their burden of demonstrating that Henry violated the CPA.

The CPA prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. RCW 19.86.020. A plaintiff must show five elements to establish a violation of the CPA: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, (4) that causes injury to the party in the party's business or property, and (5) that the injury is causally linked to the unfair or deceptive act. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784–85, 719 P.2d 531 (1986).

As stated above, the trial court did not find that Henry had engaged in any unfair or deceptive act or practice. The absence of any such finding supports the conclusion that the LeClaires did not meet their burden of proof to show a violation

of the CPA. On the record before us, the findings of fact supported the conclusion that the LeClaires had not demonstrated that Henry violated the CPA.

III.    Admission of Evidence

The LeClaires contend that the court erred in admitting Henry's testimony that they could have switched their loan application from the 203b loan back to the 203k loan.

We may refuse to review any claim of error that was not raised before the trial court. RAP 2.5(a). "It is well settled that objections to evidence cannot be raised for the first time on appeal." Sepich v. Dep't of Labor & Indus., 75 Wn.2d 312, 319, 450 P.2d 940 (1969). Henry stated three times during cross-examination that the LeClaires could have switched the loan back to a 203(k) from the 203(b). The LeClaires did not object to this testimony or question Henry about the accuracy of this statement. Because they did not raise any objection to this evidence before the trial court, they cannot raise it for the first time on appeal.

IV.    Consideration of Additional Evidence on Appeal

The LeClaires designated four "supplemental exhibits" as part of the clerk's papers before this court, then filed the documents with the superior court on July 8, 2019. Generally, the record on review may consist of a report of any oral proceeding, papers filed with the clerk of the trial court, exhibits, and/or a certified record of administrative adjudicative proceedings. RAP 9.1. The Rules of Appellate Procedure provide a limited remedy under which we may direct that additional evidence may be taken if all of the following criteria are met:

(1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

RAP 9.11(a); Harbison v. Garden Valley Outfitters, Inc., 69 Wn. App. 590, 593–94, 849 P.2d 669 (1993).

In this case, we do not find that it is equitable to excuse the LeClaires' failure to present this evidence to the trial court. The evidence sought to be introduced was available to the LeClaires at the time of trial, and they do not give any reason to excuse their failure to present it. See Harbison, 69 Wn. App. at 594. We decline to consider this evidence on review.

Affirmed.

_____

WE CONCUR:

_____        _____

- 14 -