IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Matter of the Marriage of | ) | |
| | ) | No.  37239-1-III |
| CHELSEA MARIA CLARK, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| SHANE NATHANIEL CLARK, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Shane Clark appeals the amount of child support imposed on him by the dissolution court.  In doing so, he assigns error to the process by which the court entered the child support.  He also argues that substantial evidence did not support the child support ruling.  We hold that no procedural errors occurred.  Because Shane fails to assign error to any findings of fact, we do not address the evidentiary contentions.

FACTS

Shane and Chelsea Clark married on September 18, 2010.  The couple bore two children, a boy born March 17, 2013 and a girl born October 17, 2015.  The parties separated on September 20, 2018. RP 14.  In August 2019, at the time of the underlying proceedings, Shane was 42 years old and Chelsea was 33 years old.

At the start of their marriage, Shane Clark worked as general manager for Spokane Import, a family business. Spokane Import, Rug Doctor, and North Star Hydro Cleaning operated under the same corporate umbrella. Shane played roles in the North Star Hydro Cleaning and Rug Doctor businesses as well. His brother currently owns North Star Hydro Cleaning.

Beginning in 2012, Shane Clark began work as a pharmaceutical sales consultant. He worked for Ferring Pharmaceuticals until 2015 and then for Purdue Pharmaceuticals. In 2017, Shane earned $113,000. Shane lost employment with Purdue in May 2018 due to a national layoff. Since then Shane has earned income through odd jobs, including selling wine barrels and performing yard work. The work has provided "pretty good money," although he has needed to reach into savings to pay expenses. Report of Proceedings (RP) at 86-88. He does not know the amount of money in his savings at the time of his separation from Chelsea. He estimated that, at the time of trial, only $300 remained in savings.

Shane Clark filed no income tax return in 2018. According to his 2018 W-2, Shane earned $45,861 in gross wages. A 2018 paystub indicated that Shane's income for 2018 through April 22 of the year totaled $46,087. He earned $7,843 in unemployment benefits according to a 2018 1099-G form.

According to Shane Clark, he engaged in no intentional domestic violence toward Chelsea Clark during their marriage. We do not know if he deems unintentional domestic violence to exist.

According to Chelsea Clark, Shane once threatened to kill her, while pointing a firearm at her. Shane also threw a beer bottle at her while she held their son. The bottle dented the wall. Immediately after throwing the beer bottle, Shane strangled Chelsea, then eight months pregnant, and threatened to kill her while their son sat on the bed next to her. Chelsea struggled to her feet and again held her son. Shane then threw a lamp at Chelsea. The lamp struck her head and caused a gash.

During trial, Chelsea Clark recounted other incidents of violence or threats of violence. According to Chelsea, Shane abuses alcohol. He often started drinking in the morning and finished at 3 a.m. the following calendar day. During the marriage, Shane threatened to commit suicide.

During the pendency of the dissolution proceeding, the trial court ordered Shane Clark to obtain a psychological evaluation. During trial, Shane mentioned services at Frontier Behavioral Health. According to Shane, the counseling service diagnosed him with "adaptive disorder, adaptability disorder." RP at 50. He supplied the court no records from the service. Shane guessed he suffered from depression.

No. 37239-1-III
*In re the Marriage of Clark*


PROCEDURE

After petitioning for a marital dissolution, Chelsea Clark requested an award of temporary child support since both children resided with her. In response to Chelsea Clark's request, Shane failed to file any current financial records or a financial declaration. The court commissioner imputed $7,834 in income to Shane Clark based on his 2016-17 financial records. The support order ordered Shane to pay $1,566 in monthly child support, $783 for each child, an amount consistent with the standard calculation. The court commissioner calculated Shane's proportional share of children's extraordinary expenses at 73 percent. On the last page of the order, the commissioner wrote, "Mr. Clark may come back for review as to his employment issues on finances[.]" Clerk's Papers (CP) at 144. The court commissioner ordered Shane to procure a psychological evaluation.

On August 21, 2019, the superior court conducted a dissolution trial. The trial's purpose was to finalize a parenting plan, a child support order, and property distribution. Shane Clark appeared pro se at trial. Shane challenged the amount of income imputed by the court commissioner for temporary support. He asked the trial court to consider his 2018 financial records. Shane testified that, since his layoff from Purdue Pharmaceuticals in May 2018, he remained unemployed and was currently "[b]etween jobs." RP at 23. He did not testify that he was unable to work. He did not disclose what

4

efforts he undertook to gain employment. He did not explain why he could not return to work in the family business.

Shane Clark failed to present a financial declaration for trial. In violation of the temporary orders, Shane failed to undergo a psychological evaluation.

During closing, Chelsea Clark's counsel intoned:

> I'm also asking the Court for the child support order as part of the child support. I didn't really have much of an update from Mr. Clark. So I'm at the same, position, I am stuck, if you will, with Commissioner Chavez's income figures for Mr. Clark and have that continue on.

RP at 210.

At the conclusion of trial, the dissolution court reserved ruling on the issue of child support. The court afforded Shane Clark until August 30 to provide financial records. The court noted that the undisputed testimony showed that Shane lacked employment. Chelsea did not argue that Shane was purposely unemployed as a litigation strategy, and Chelsea might agree that the lack of work related to mental health problems. The court warned Shane that it would rely on the paltry evidence before it when awarding child support if he failed to provide current financial records. The dissolution court directed Chelsea's counsel to prepare the child support order. The court stated it planned to enter orders by September 6.

On August 30, Shane Clark filed two financial declarations. In the financial declarations, Shane declared he did not currently work because of the national layoff

from Purdue, a protective order against him, divorce proceedings, and his moving family members during the summer of 2018. The declarations averred that he lacked any income. The declarations listed his expenses. We do not know why Shane supplied two, rather than one comprehensive declaration.

On September 2, 2019, pursuant to the dissolution court's direction, Chelsea Clark's counsel e-mailed the dissolution court's judicial assistant drafts of findings, decree, child support order, and parenting plan. Resp't's Br., App'x A, p. 2. Counsel copied Shane Clark, then unrepresented, at the e-mail used by his own former counsel in contacting him. The e-mail states in full:

> Dear Mr. Shaw:
> In anticipation of the presentment set for 11:00 am this Friday, I am providing drafts of the findings, decree and parenting plan for consideration.
> I saw Mr. Clark at Court Friday the 30th so I presume he provided financial information to assist Judge Fennessy in the child support determination.
> I will bring the background to a child support order and worksheet to the presentment as well.
> Thank you
> Matthew Dudley

Resp't's Br., App'x A, p. 2. This e-mail was not inserted into the clerk's papers. Chelsea Clark's counsel provided this court with the e-mail as an appendix to her brief.

On September 6, 2019, attorney Julie Watts filed a notice of appearance on behalf of Shane Clark. Shane and his counsel appeared at a presentment hearing for final orders

6

that same day.  Chelsea's counsel then presented the proposed orders.  Shane's counsel requested a continuance so that she could obtain a transcript of the trial court's ruling.  Shane argued that his current attorney needed the transcript to determine if the proposed final orders, drafted by counsel for Chelsea Clark, accurately reflected the court's ruling.  The trial court granted the continuance and scheduled a presentment hearing for September 13, 2019.

On September 13, 2019, Shane Clark submitted written objections to Chelsea Clark's proposed parenting plan, a proposed order of dissolution, proposed findings and conclusions, and a proposed restraining order.  Shane, through counsel repeated the objections during the hearing.  Shane presented no alternative child support worksheet or order.  He registered no objections to a proposed child support orders or worksheets.  Shane later explained he did not object to the proposed child support order because the dissolution court had yet to rule on the amount of support.  At the conclusion of the presentment hearing, the trial court promised a ruling in the near future.

On November 13, 2019, the dissolution court signed final orders, including dissolution findings of fact and conclusions of law, a dissolution decree, final restraining order, child support schedule worksheets, order for child support, and parenting plan order.  With the exception of the restraining order, all the final orders showed Chelsea Clark's counsel's footer.

Finding of fact 5 in the child support order assigned $7,834 to Shane as net monthly income. Finding of fact 6 read:

This parent's [Shane's] monthly net income is imputed because this parent is voluntarily unemployed. The imputed amount is based on the information below: Review of 2016 and 2017 financial records. Mr. Clark did not file any current financial records nor a financial declaration. This determination was made at the temporary order hearing and Mr. Clark has provided no financial information.

CP at 32.

The child support worksheet and order establish monthly child support payments at $1,680/month, a $114 increase from the temporary order. Shane indicates the increase reflects a change in the underlying economic table. Appellant's Br.at 10 n.6. The child support worksheet and order also direct Shane to pay 73 percent of the children's extraordinary expenses based on the parties' respective incomes.

The temporary child support order did not require that Shane Clark remain current in his child support obligation. The final order allows Shane to claim his son as a deduction on his taxes only if he is current on his child support obligation. The final order added children's extracurricular activities as an expense to be shared by Shane.

In his appeal brief, Shane Clark contends that the final orders signed by the trial court comprised different provisions than those discussed at the presentment hearing on September 13, 2019. Our record, however, contains no proposed orders, so we cannot confirm this assertion. To support his claim of changes, Shane relies on his written and

oral objections to the proposed orders. For example, Shane writes that he objected to language in section 4, paragraph 6 of Chelsea Clark's proposed final parenting plan that read the father uses methamphetamine. The final orders, nevertheless, contain no such language.

On December 5, 2019, counsel for Shane Clark filed a notice of appeal on behalf of Shane. On February 10, 2020, counsel wrote a letter to the dissolution court, with a copy to Chelsea Clark's counsel, regarding claimed irregularities in the record. In this letter, Julie Watts indicated that she discovered an entry in the court docket dated November 13, 2019, entitled, "'UNCONTESTED RESOLUTION HEARING Signed DCD; FNFCL; WSCSS Worksheets; Restraining Order; PP; ORS; Presented by Matthew Dudley.'" CP 78, 136. Watts questioned the docket entry stating that neither she nor Shane Clark appeared at a hearing on November 13, 2019, nor did they receive notice of a hearing. She also expressed concern that the dissolution court had communicated with Chelsea Clark's counsel to modify the orders without notice to her.

On February 13, 2020, the trial court's judicial assistant e-mailed Julie Watts and informed her that the court would not review the letter because of its ex parte nature. The judicial assistant volunteered to assist Watts in scheduling a hearing. Watts responded that she did not submit the letter ex parte, since she sent a copy of the letter to counsel for Chelsea Clark. She asked for available hearing dates.

The dissolution court's judicial assistant responded to Julie Watts' message by stating that he saw that she copied Chelsea Clark's attorney on the initial letter, but he was unsure of whether Watts still represented Shane Clark. The assistant wrote that he understood that Watts had withdrawn from the superior court proceedings and now only represented Shane for appeal purposes. The assistant provided available dates for a hearing. Watts responded that she submitted a limited notice of appearance on December 5, 2019 and that she represented Shane on matters related to his appeal of the final orders. She requested a hearing date for March 20, 2020.

The coronavirus disease pandemic delayed the hearing requested by Shane Clark. The hearing transpired on June 19, 2020. At the hearing, Chelsea Clark's counsel denied ex parte contact with the dissolution court's department. He mentioned that he copied Shane Clark on the e-mail.

The trial court commented that its own actions may have contributed to the concerns raised by Shane Clark's counsel. The dissolution court remarked that it modified the Word documents sent by counsel Matthew Dudley when finalizing the orders. The court added that, when it modified the orders, it considered Shane Clark's objections to the orders. The trial court denied any communication with the wife's counsel after the presentment hearing. It added that no hearing occurred on November 13, 2019.

During the June 19, 2020 hearing, the dissolution court remarked that it scheduled the day's hearing to preclude any concern about ex parte contact. The court wanted Shane Clark to have the opportunity to inquire about activities leading to the court's signing of the final orders and to afford the court an opportunity to explain that no ex parte contact occurred.

After submission of her opening brief to this court, Shane Clark's counsel, Julie Watts, withdrew. Shane did not file a reply brief.

## LAW AND ANALYSIS

On appeal, Shane Clark assigns procedural error leading to the dissolution court's signing of the final dissolution orders, including the child support worksheets and child support order. He contends that Chelsea Clark's counsel and the trial court engaged in ex parte contact and that the dissolution court breached CR 54(f)(2). He also assigns error to the amount of child support. In challenging the child support order, he complains that substantial evidence did not support the dissolution court's finding that he was voluntarily unemployed.

### Ex Parte Communication

Shane Clark contends that counsel for Chelsea Clark e-mailed the trial court proposed orders in a pending case and thereby requested relief ex parte. In response, Chelsea supplied this court, as an attachment to her brief, the e-mail communication, by which her counsel sent the proposed orders to the court, dated September 2, 2019. The e-

mail demonstrates that Chelsea's counsel sent Shane, at the time unrepresented by counsel, copies of the e-mail and of the proposed orders. Shane does not submit a reply brief and does not dispute the genuineness of the e-mail. He does not object to our consideration of the e-mail. Nevertheless, Chelsea does not move this court, pursuant to RAP 9.11, to allow additional evidence on review.

We must resolve two questions. First, should we consider the September 2 e-mail when Chelsea Clark has filed no motion for review of additional evidence? Second, whether an e-mail to the dissolution court judge with a copy to the opposing party constitutes an ex parte communication? We agree to consider the e-mail because Chelsea supplied the court the e-mail in response to an accusation by Shane Clark, circumstances show that Shane received the e-mail and its attachments, counsel provided the e-mail to the court as an officer of the court, Shane filed no objection to the consideration of the e-mail, and the e-mail will help resolve an issue on appeal. We then hold that a letter or e-mail to the judge with a copy to the opposing counsel or party does not constitute an ex parte communication.

*Issue 1: Should this court consider the September 2 e-mail sent by Chelsea Clark's counsel to the dissolution court with a copy to Shane Clark?*

*Answer 1: Yes.*

No. 37239-1-III
*In re the Marriage of Clark*

Chelsea Clark did not submit the September 2 e-mail as part of the superior court record. This reviewing court generally accepts no new evidence. In limited circumstances, however, the court may do so. RAP 9.11(a) declares:

> Remedy Limited. The appellate court may direct that additional evidence on the merits of the case be taken before the decision of a case on review if: (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through postjudgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

(Boldface omitted.) Note that this court, at its own direction, may take additional evidence without a motion from a party.

RAP 9.11 presents a limited remedy. *Harbison v. Garden Valley Outfitters, Inc.*, 69 Wn. App. 590, 593, 849 P.2d 669 (1993). RAP 9.11(a) contains six conditions under which new evidence will be received on appeal. Normally, new evidence will be accepted only if the movant fulfills all six of these conditions. *State v. Ziegler*, 114 Wn.2d 533, 541, 789 P.2d 79 (1990); *Harbison v. Garden Valley Outfitters, Inc.*, 69 Wn. App. 590, 593 (1993).

We deem all six conditions fulfilled with regard to the submission of the September 2 e-mail. Shane Clark accuses the dissolution court and opposing counsel of ex parte contact. The e-mail defeats this allegation. Review of the evidence resolves one

13

of the issues on review. Equity demands review of the letter because Shane Clark already has the evidence in his hands. Assuming Chelsea failed to provide copies of the e-mail and the attached proposed order, Shane's counsel received copies at the September 6 hearing. Counsel was afforded another week to respond to the proposed pleadings and did so. Assuming Shane suggests that ex parte communication occurred after September 6, the record does not support this contention. The dissolution court changed provisions in the order without further contact with either side.

The limitations of RAP 9.11 may not even apply in this appeal. The September 2 e-mail addressed the procedures before the dissolution court. The rule restricts the use of new evidence to only instances when the evidence is directed to "'the merits of the case.'" *Randy Reynolds & Associates, Inc. v. Harmon*, 193 Wn.2d 143, 154, 437 P.3d 677 (2019).

We may also waive any conditions to RAP 9.11(a) to serve the ends of justice. *Sears v. Grange Insurance Association*, 111 Wn.2d 636, 640, 762 P.2d 1141 (1988), *overruled by Butzberger v. Foster*, 151 Wn.2d 396, 89 P.3d 689 (2004); *Washington Federation of State Employees, Council 28, AFL-CIO v. State*, 99 Wn.2d 878, 885, 665 P.2d 1337 (1983); *In re Detention of Brooks*, 94 Wn. App. 716, 723, 973 P.2d 486 (1999), *aff'd in part, rev'd in part*, 145 Wn.2d 275, 36 P.3d 1034 (2001), *overruled in part on other grounds by In re Detention of Thorell*, 149 Wn.2d 724, 72 P.3d 708 (2003). We would also waive conditions unfulfilled.

The September 2 e-mail comes from a party's attorney, not from the party herself. Attorneys of this state are recognized as officers of the court. *Dike v. Dike*, 75 Wn.2d 1, 5, 448 P.2d 490 (1968). We presume attorneys act ethically and tell the truth. *Dike v. Dike*, 75 Wn.2d 1 (1968); *Johnson v. Asotin County*, 3 Wn. App. 659, 663, 477 P.2d 207 (1970). Therefore, we consider the e-mail genuine.

*Issue 2: Did Chelsea Clark's counsel engage in ex parte communication with the dissolution court?*

*Answer 2: No, because Chelsea's attorney copied Shane Clark with the e-mail and the attachments.*

RPC 3.5 prohibits an attorney from engaging in ex parte communication with a judge. CJC 2.9(A) bars a judge from initiating, permitting, or considering ex parte communications. Washington applies the term "'ex parte communication'" to communications made by or to a judge, during a proceeding, regarding that proceeding, without notice to a party. *State v. Watson*, 155 Wn.2d 574, 579, 122 P.3d 903 (2005).

Chelsea Clark's counsel sent his e-mail to the dissolution court's assistant, rather than directly to the judge. Communication between a party and a staff member in the judge's department can constitute ex-parte communication when staff convey substantive information to the judge from counsel and notice is not given to all parties. *State v. Bourgeois*, 133 Wn.2d 389, 407-08, 945 P.2d 1120 (1997).

15

Some jurisdictions have expressly held that an e-mail communication to a judge by one counsel does not constitute ex parte contact when counsel copies opposing counsel on the e-mail. *Borough of Kennett Square v. Lal*, 164 Pa. Commw. 654, 643 A.2d 1172, 1174-75 (1994); *State Farm Mutual Automobile Insurance Co. v. Cedolia*, 571 So. 2d 1386, 1387 (Fla. Dist. Ct. App. 1990); *Cormier v. Carty*, 381 Mass. 234, 408 N.E.2d 860, 862 (1980). The Kentucky Supreme Court warned of dangers attended to communications to a court by e-mail, such as an accusation of ex parte contact. *Rigdon v. Commonwealth*, 522 S.W.3d 861, 868-70 (Ky. 2017). Nevertheless, the Kentucky court did not void the trial court order because the opposing party showed no prejudice. Other jurisdictions have ruled that the sending of the e-mail to the court constituted an ex parte communication because counsel failed to send a copy to opposing counsel. *In re Frelix*, 134 A.D.3d 58, 17 N.Y.S.3d 716 (2015); *In re Williams*, 276 B.R. 899 (C.D. Ill. 1999); *Purifoy v. Mafa*, 556 S.W.3d 170 (Tenn. Ct. App. 2017); *In re Disciplinary Proceedings Against Hudec*, 2014 WI 46, 354 Wis. 2d 728, 848 N.W.2d 287; *Magnan v. Holen*, 11 Am. Tribal L. Rptr. 256, (Fort Peck Ct of App. 2010); *In re Marek*, 609 N.E.2d 419 (Ind. 1993). We note that the Washington Supreme Court, in *State v. Bourgeois*, 133 Wn.2d 389 (1997), recognized that an ex parte communication occurs when notice is not given to all parties. No decision stands for the proposition that the court and counsel communicate ex parte if one of them sends a copy to other counsel.

Shane Clark also contends, in a footnote, that the circumstances surrounding the trial court's ruling lacked the appearance of fairness. We do not consider arguments raised solely in footnotes.

CR 54(f)(2)

*Issue 3: Whether the trial court breached CR 54(f)(2) when signing the final orders?*

*Answer 3: We decline to address this question because Shane Clark asserts no prejudice as a result of any violation of the rule.*

Shane Clark next argues that the trial court violated CR 54(f)(2) when it accepted a proposed child support order ex parte from Chelsea Clark's attorney and entered it without having made a ruling and without ever providing Shane Clark or his counsel with notice or an opportunity to object. We reject some of the factual premises behind this assignment of error. Chelsea Clark's counsel did not engage in ex parte communication. Shane Clark and his counsel received copies of the proposed orders. The dissolution court granted Shane's counsel an extra week to respond. So counsel was afforded at least five days before presentation. Shane responded.

CR 54(f)(2) provides:

> No order or judgment shall be signed or entered until opposing counsel have been given 5 days' notice of presentation and served with a copy of the proposed order or judgment.

Failure to comply with the notice requirement in CR 54(f)(2) generally renders the trial

court's entry of judgment void. *Burton v. Ascol*, 105 Wn.2d 344, 352, 715 P.2d 110

(1986); *Seattle v. Sage*, 11 Wn. App. 481, 482, 523 P.2d 942 (1974). A judgment entered

without the notice required by CR 54(f)(2) is not invalid, however, when the complaining

party shows no resulting prejudice. *Burton v. Ascol*, 105 Wn.2d 344, 352 (1986). In

*Burton v. Ascol*, our high court refused to find prejudice resulted from a lack of notice

when an appellant had the opportunity to challenge the judgment and raise the issues it

desired on appeal.

We question whether the dissolution court breached CR 54(f)(2). His counsel

received notice of a presentment hearing a week in advance. The dissolution court made

changes to the orders, rather than Chelsea Clark's sending modified orders to the court.

Nevertheless, Shane Clark fails to identify, or even argue, any prejudice resulted from the

failure to receive notice. So we need not analyze CR 54 further.

Involuntary Unemployment

*Issue 4: Whether substantial evidence supports the dissolution court's finding that*

*Shane Clark was voluntarily unemployed?*

*Answer 4: We do not address this question because Shane Clark does not assign*

*error to any finding of fact.*

Shane Clark contends that the dissolution court failed to provide any analysis

showing that it considered factors under RCW 26.19.071(6) before determining that he

was voluntarily unemployed. Shane further contends that, even had the trial court engaged in the required analysis, substantial evidence does not support the imputation of income. Chelsea Clark responds that substantial evidence supports the trial court's finding that income should be imputed to Shane based on voluntary unemployment. She argues that Shane never presented any evidence that he attempted to secure employment, nor did he provide 2019 pay information. She highlights that Shane never testified that he could not work. He did not disclose his attempts to gain employment.

In finding of fact 6, the dissolution court found Shane Clark to be voluntarily unemployed. In one assignment of error in his brief, Shane complains that the trial court found him voluntarily unemployed. But he fails to assign error to any finding of fact, let alone finding of fact 6 and related findings.

RAP 10.3(g) declares in part:

> Special Provision for Assignments of Error. . . . A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

(Boldface omitted.) Thus, we decline to address Shane Clark's contention that substantial evidence failed to support the trial court's ruling.

Financial Records

*Issue 5: Whether substantial evidence supports the dissolution court's finding that Shane Clark failed to file any current financial records or a financial declaration?*

*Answer 5: We decline to address this assignment of error because Shane fails to assign error to any findings of fact.*

Shane Clark contends that he filed current financial declarations after the conclusion of the trial. Chelsea responds that the declarations were incomplete and of no use. We refuse to address this assignment of error, however. In finding of fact 6, the dissolution court wrote, in part: "Mr. Clark did not file any current financial records nor a financial declaration." CP at 32. Shane assigns no error to this finding of fact or any related findings with regard to child support. Therefore, we decline to address this contention.

Child Support Amount

Finally, Shane Clark complains that the dissolution court ignored all the financial evidence presented at trial and imputed income to him in violation of a Washington State statute by blindly adopting the outcome of a previous temporary order in the absence of any independent analysis. Nevertheless, Shane assigns no error to finding of fact 5 that establishes his net income for purposes of child support or the finding of fact that forms the basis for imputation of income. Under RAP 10.3(g), we also refuse to address this assignment of error.

No. 37239-1-III
*In re the Marriage of Clark*

CONCLUSIONS

We affirm all of the dissolution court's ruling.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, A.C.J.

_____
Lawrence-Berrey, J.

21